## CANAL–COMMERCIAL TRUST & SAVINGS BANK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6562.

Circuit Court of Appeals, Fifth Circuit.
Feb. 21, 1933.

Rehearing Denied April 1, 1933.

Benjamin W. Dart, of New Orleans, La., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

In this review of a redetermination by the Board of Tax Appeals of a deficiency for the year 1920 in income taxes, the controlling question is whether $1,000,000 paid by Canal-Commercial National Bank to Canal-Commercial Trust & Savings Bank ostensibly as a dividend was an ordinary dividend or an amount paid in liquidation under Revenue Act 1918, § 201 (40 Stat. 1059).

The facts are that the latter company, to be called the Trust Bank, held from 1914 until December 31, 1920, 95 per cent. or more of the stock of the former, to be called the National Bank, and on December 31, 1920, bought the remaining stock from its directors and stockholders who had owned it. The whole investment in the stock was $1,293,900. There were interlocking directorates. Consolidated tax returns were made for all years through 1920. On June 24, 1920, the directors of the National Bank declared a dividend of 5 per cent. payable July 1st, and paid out of undivided profits. On September 9th they passed $250,000 from undivided profits to surplus, making the surplus $1,000,000. On December 23d they declared a dividend of 10 per cent. payable December 31st, and paid out of undivided profits. On December 21st the directors of the Trust Bank had approved a proposition to liquidate the National Bank and take over its assets and assume its liabilities, and authorized its trustee holding its stock in the National Bank to waive legal delays and vote in a shareholders' meeting for the liquidation on such terms as he thought proper. On December 30th the directors of

the Trust Bank authorized a purchase from the National Bank of all the latter's assets for $618,461.69, and an assumption of its liabilities. At the same place and hour, with the same secretary and being largely the same persons, the directors of the National Bank met and declared a dividend of $200 per share, i. e., $1,000,000, payable that day. Checks therefor were drawn at once in favor of the Trust Bank, and the next day were paid through the Clearing House and charged $900,000 to surplus and $100,000 to undivided profits, leaving surplus $100,000 and undivided profits $18,461.69. On the morning of December 31st the directors of the National Bank voted that it was their sense that the Bank be placed in voluntary liquidation under sections 5220 and 5221 of U. S. Rev. Stats. (12 USCA §§ 181, 182), and authorized the liquidating agent named by them to transfer, set over, and deliver to the Trust Bank all the National Bank's assets for $618,-461.69 and the assumption of its liabilities. Various other details of the liquidation were voted and the Board "adjourned sine die." The stockholders met that afternoon, unanimously waiving notice, and through a single proxy unanimously voted liquidation and authorized the transfer of assets to the Trust Bank. The liquidating agent executed a transfer, and was given a check for $618,461.-69, and appropriate book entries were made. On the same day, December 31st, the liquidating agent gave his check for $618,461.69 to the Trust Bank, which surrendered to him the certificates for all the capital stock of the National Bank.

The transaction on its face was a sale of the stock which had cost the Trust Bank $1,293,900 for $618,461.69. If the swapped checks be disregarded, the stock was exchanged for the assets remaining after the payment of the $1,000,000 cash dividend declared the day before, but since there is no proof to the contrary these assets must be assumed worth the value at which they were taken. The apparent difference between cost and sale price of the stock is claimed as a deductible loss. But if the $1,000,000 collected in cash the same day is to be considered the loss is converted into a large gain. That sum, though declared as a dividend from surplus and profits, we think was rightly held by the Board to be "an amount distributed in the liquidation of the corporation" within the meaning of Revenue Act 1918, § 201 (c), 40 Stat. 1059, and is required thereby to be treated as paid in exchange for the shares of stock. Treasury Regulations 45, arts. 1541 and 1548,

in force in 1920 define the dividends which are not subject to normal tax as those "paid in the ordinary course of business though extraordinary in amount," and define a distribution in liquidation as a return to the stockholder for a surrender of his stock as distinguished from "a dividend paid by a going corporation out of current earnings or accumulated surplus when declared by directors in their discretion, which is in the nature of a recurrent return upon the stock." These regulations were sustained in Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 245, 72 L. Ed. 544, 56 A. L. R. 379, and their meaning thus summarized: "The Treasury Regulations correctly interpreted the act as making section 201 (a) applicable to a distribution made by a going corporation to its stockholders in the ordinary course of business, and section 201 (c) applicable to a distribution made to stockholders in liquidation of the corporation." The determining element therefore is whether the distribution was in the ordinary course of business and with intent to maintain the corporation as a going concern, or after deciding to quit with intent to liquidate the business. Proceedings actually begun to dissolve the corporation or formal action taken to liquidate it are but evidentiary and not indispensable. Tootle v. Commissioner (C. C. A.) 58 F.(2d) 576. The fact that the distribution is wholly from surplus and not from capital, and therefore lawful as a dividend is only evidence. In Hellmich v. Hellman, and Tootle v. Commissioner, supra, the distribution was wholly from profits yet held to be one in liquidation. In the present case a regular semiannual dividend of 5 per cent. was declared in June, and one of 10 per cent. in December, both from undivided profits. The surplus had been raised to $1,000,000 on September 9th. It is not likely that the directors of a bank would pay out an additional dividend of 200 per cent. and equal to its entire surplus if it was intended to continue business. In fact, at the very hour and place the dividend was declared the owner of 95 per cent. of the stock, having previously instructed its stock to be voted for a liquidation and waived legal delay in calling the stockholders' meeting, was authorizing the purchase of the entire assets and the assumption of the debts of the National Bank, which would not only put it out of business but would automatically liquidate it. That the entire program was punctually and unanimously carried out the following day leaves no doubt that it had been determined fully in advance, and that the $1,000,000 authorized to be turned over on

December 30th was but a step in the final liquidation accomplished on December 31st. The 250 shares of stock not owned by the Trust Bank could not be an obstacle, because it was but 5 per cent. of the stock, while 66⅔ per cent. could vote the liquidation; and that checks for the entire $1,000,000 were on December 30th given to the Trust Bank with nothing to this outstanding stock proves that its purchase had already been arranged for. There is no escape from the conclusion that the amount was paid in liquidation. The possible hardship of a double normal tax on such part of the surplus as was earned by the National Bank since the Trust Bank bought its stock was considered unavoidable in Hellmich v. Hellman. We conclude that a profit and not a loss was realized on the disposition of this stock in 1920.

The petition for review is denied, and the decision of the Board of Tax Appeals is affirmed.