## SMITH v. UNITED STATES.
### No. 53.

District Court, D. Delaware.

Sept. 4, 1940.

William H. Foulk (of Satterthwaite & Foulk), of Wilmington, Del., for plaintiff.

Stewart Lynch, U. S. Atty., of Wilmington, Del., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., for defendant.

NIELDS, District Judge.

This is an action to recover $57,792.74 alleged to have been illegally collected from plaintiff. The sum represents additional assessments of income taxes for the calendar years 1934 and 1935.

In 1923 plaintiff organized a personal holding company known as Wollaston Securities Company, hereinafter referred to as "company". Its authorized capital was 5,000 shares of preferred stock (par value $100 per share) and 100 shares of common stock (without par value). Company accepted plaintiff's offer to transfer to it securities of the value of $397,114.95 and cash in the amount of $2,985.05, or a total of $400,100. Company paid therefor by issuing to plaintiff 4,000 shares of its preferred stock and 100 shares of its common stock. The securities had been acquired by plaintiff at a cost of $231,260.78. In short, plaintiff contributed all the Company's assets and received all the Company's capital stock then issued and outstanding. At all times plaintiff was and now is the sole stockholder of company, as well as its president and director. Plaintiff testified that Company was organized to relieve plaintiff's estate from paying a multiplicity of state inheritance taxes. Company never engaged in the manufacturing, building, retail or wholesale business. Company never bought or sold securities for the public. Its only business was to hold, purchase and sell real and personal property contributed to it by plaintiff. Company had no debts except incidental office expenses. This was true at all times including the years 1934 and 1935.

July 21, 1928 the certificate of incorporation of Company was amended by increasing the authorized capital stock to 10,000 shares of preferred stock (par value $100 per share) and 2,000 shares of common stock (without par value).

From 1924 to 1935, inclusive, Company had net earnings and paid dividends in cash and in preferred stock in the following amounts:

| Year | Net Earnings | Dividends Paid Cash | Stock |
|---|---|---|---|
| 1924 | $23,571.40 | $ 2,000.00 | |
| 1925 | 72,787.78 | 18,500.00 | |
| 1926 | 38,632.26 | 24,000.00 | |
| 1927 | 52,917.80 | 28,000.00 | 800 Shs. |
| 1928 | 44,761.96 | 24,000.00 | |
| 1929 | 48,893.12 | 19,200.00 | 384 Shs. |
| 1930 | 43,321.12 | 13,952.00 | 277 Shs. |
| 1931 | 15,107.89 | 6,033.44* | 431 Shs. |
| 1932 | 23,904.99 | | |
| 1933 | 24,749.62 | 7,650.00 | |
| 1934 | 7,214.48 | 12,800.00 | |
| 1935 | 15,499.84 | 14,405.00 | |

* Declared but not paid.

In 1934 and 1935 Company had accumulated earnings in excess of $240,000.

Company declared stock dividends in preferred stock to plaintiff in the years and amounts as follows:

| Date | Shares |
|---|---|
| 1–12–27 | 800 |
| 1– 2–29 | 96 |
| 1– 4–29 | 288 |
| 1– 2–30 | 277 |
| 1–14–31 | 431 |
| | 1892 |

On direct examination plaintiff testified concerning the purpose of the issuance of the stock dividends as follows:

"Q. Mr. Smith, the record further shows that during the years 1927, 1929, 1930 and 1931, Wollaston Securities Company declared and paid dividends on its preferred stock in the amounts of 800 shares, 384 shares, 277 shares and 431 shares, respectively. It further shows that you, during all that time, acted as the President, a director and the sole stockholder of Wollaston Securities Company. I assume, therefore, that you were largely responsible for the dividend policy of the company, and can tell us the purpose of declaring those dividends in stock? A. The general idea, in declaring those dividends in stock, was to build up the company and make its assets larger than what they were before, that is, that the stock should practically agree with the actual capitalization of the company; and to gradually increase the value of the company from year to year as its earnings by dividends or interest or conversion of the corpus of the company into a larger and stronger company, each year as it went along. The whole object was to gradually increase the value of the company."

On cross examination, plaintiff testified in substance that it was his desire in 1927, 1929, 1930 and 1931 to receive stock dividends rather than cash dividends from the net earnings. He testified:

"XQ. I am just asking you, Mr. Smith, how did the declaration of the stock dividends in those years strengthen the business? A. Instead of paying the dividends in cash, by issuing additional stock, personally owning the stock, I would be receiving more dividends on the stock than I would if it were paid out in cash dividends probably."

December 28, 1928, Company voted plaintiff a salary of $5,000 payable in preferred stock and issued to plaintiff 50 shares of preferred stock.

October 1, 1929 plaintiff transferred to Company additional securities and cash in the amount of $170,856.06 being the cost of said securities plus the cash. Company paid therefor by issuing to plaintiff 1708 shares of preferred stock.

December 28, 1933 the board of directors of the company resolved that in view of the financial depression the assets of the company should be revalued to express their true worth; and that the capital be reduced from $765,000 represented by 7,650 shares of preferred stock to $640,000 represented by 6,400 shares of preferred stock. Thereupon plaintiff surrendered to Company certificates representing 7,650 shares of preferred stock and received a new certificate for 6,400 shares of said stock. December 29, 1933 a certificate showing said reduction of capital was filed by Company under the provisions of the Delaware law.

First transaction: In May 1934 the directors of Company adopted the following resolution:

"J. Ernest Smith offered to purchase from the company 165 shares of the capital stock of the Delaware Registration Trust Company at Five Hundred and 0%100 Dollars per share and to purchase 1,650 shares of the capital stock of The Corporation Registry Company for the sum of Five Thousand Dollars, a total of Eighty-eight Thousand Dollars ($88,000) and in payment therefor he would convey to the company for cancellation eight hundred eighty (880) shares of the preferred stock of this company at One Hundred Dollars par.

"After due consideration of the proposition, J. Ernest Smith not voting, the following resolution was unanimously adopted:

"Resolved: That the proposition be accepted and the transfer of said stock to J. Ernest Smith is hereby authorized to be made upon delivery by him of eight hundred and eighty shares of the preferred stock of Wollaston Securities Company.

"Further resolved: That the eight hundred eighty shares of the preferred stock of this company so surrendered shall be cancelled on the books of the company."

Thereupon Company delivered to plaintiff the shares of Delaware Registration Trust Company and of the Corporation Registry Company and plaintiff paid therefor with 880 shares of preferred stock of Company which Company thereupon can-

celled. The value of the shares of stock received by plaintiff at the time of the transfer was $49,500.

Plaintiff testified that he desired to withdraw from Company stock of the Delaware Registration Trust Company and stock of the Corporation Registry Company for the following reason: "A. * * * I was somewhat afraid that the stock might be sold without consideration of the minority stockholders, and for that reason I thought it better be in my hands individually, by which I could determine the protection, if possible, to those minority stockholders; rather than leave it in the hands of my executors or trustees to sell my shares and not protect the minority stockholders who were my business associates, and for that reason I purchased from the company those shares and protected that interest as well as I could by my Will, so that those minority stockholders would receive the same consideration in the sale of the total stock to anybody else that I received for mine. That was my object."

Second transaction: In November 1934 the directors of Company adopted a resolution, in part, as follows:

"This meeting was called to consider the proposition of J. Ernest Smith to assign 435 shares of six per cent preferred stock, par $100, to this company in exchange for certain mortgage securities held by this company. After due consideration of the proposition, on motion duly made, seconded, and carried, it was unanimously

"Resolved, to accept from the said J. Ernest Smith 435 shares of the six per cent preferred stock at $100, and to assign and transfer to him in payment therefor the following stated bonds and mortgages: (then follows a list of mortgages securing bonds in the amount of $43,500)."

Thereupon Company assigned said bonds and mortgages to plaintiff, valued at $43,500, and received therefor from plaintiff 435 shares of preferred stock which Company immediately cancelled. Plaintiff testified his purpose in this transaction was to increase the corpus of the trust he had created for the benefit of his wife and daughter and the survivor of them.

Third transaction: In November 1935 the directors of company resolved:

"The President stated that in his estimation a portion of the capital and surplus could properly be used in the purchase of the company's preferred stock, and to this end he suggested that four hundred twenty-five (425) shares of the preferred stock, par $100, be purchased from the holders thereof at the par value of the same, that is $100, and that this purchase would necessitate the expenditure of Forty-two Thousand Five Hundred Dollars ($42,500.00) of the capital and surplus of the company.

"Resolved: That this company purchase four hundred twenty-five shares (425) of the preferred stock at the price of $100 per share, payable in cash.

"Further resolved: That the said four hundred twenty-five (425) shares when so purchased and delivered to this company upon the payment of the said sum of money, be cancelled and the preferred stock of the company reduced from five thousand eighty-five (5,085) shares, representing Five Hundred Eight Thousand, Five Hundred Dollars ($508,500.00) to forty-six hundred and sixty shares (4,660), representing Four Hundred Sixty-six Thousand Dollars ($466,000.00).

"Further resolved: That the assets of the company remaining after said purchase are sufficient to pay any debts of the company, the payment of which has not been otherwise provided for."

Thereupon plaintiff transferred 425 shares of his preferred stock to Company and received therefor $42,500 in cash. Plaintiff testified: "A. The purpose of that transaction was to take that amount of money and invest it in annuity bonds for the benefit of the beneficiaries under my Will." and to reduce the dividend requirements on his preferred stock. The 425 shares received by Company were promptly cancelled.

On cross examination plaintiff testified:

"XQ. In other words was there anything but a personal reason which prompted the redemption of the stock in 1934? A. That was the only reason that the stock was transferred.

"XQ. Did you have in mind at that time liquidating the Wollaston Securities Company. A. No."

## Questions Involved

Whether the shares of preferred stock of plaintiff were redeemd by Company at such time and in such manner as to make the redemption essentially equivalent to the distribution of taxable dividends within the meaning of Section 115(g) of the Revenue Act of 1934. Stated differently, whether the cash and securities received by plain-

tiff from Company are taxable dividends under said section of the revenue laws.

### Statute

Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 703: "Sec. [§] 115. *Distributions by Corporations*

"(a) *Definition of Dividend.* The term 'dividend' when used in this title (except in section 203(a) (4) and section 207(c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) *Source of Distributions.* For the purpose of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113.

\* \* \* \* \* \*

"(g) *Redemption of Stock.* If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. \* \* \*"

### Argument

The Circuit Court of Appeals for the Third Circuit considered the application of the above statute in a recent case. In that case the taxpayer held 98% of the stock of a corporation. The company redeemed and cancelled a portion of the stock held by the taxpayer from accumulated earnings. In holding that the redemption and cancellation of the stock was taxable as a distribution of earnings substantially equivalent to a cash dividend the court said:

"The petitioner contends that the transaction was in partial liquidation of the corporation under section 115(c) of the Revenue Act of 1928, 26 U.S.C.A. § 2115(c) [26 U.S.C.A.Int.Rev.Acts, page 385] and that only the liquidated profit of $31,975 was taxable. The Commissioner, on the other hand, contends that the transaction was essentially equivalent to the distribution of a taxable dividend under section 115 (g) of the Revenue Act of 1928, 26 U.S.C.A. § 2115(g) [26 U.S.C.A.Int.Rev.Acts, page 385], and that the entire $123,200 should be reported in the petitioner's income tax return as dividend subject to tax.

"The applicable statute is section 115 of the Revenue Act of 1928 (26 U.S.C.A. § 2115 [26 U.S.C.A.Int.Rev.Acts, page 384])

\* \* \* \* \* \*

"The money with which the corporation paid the petitioner came from its profits and earnings. Prior to the sale to the corporation of 440 shares of capital stock, the petitioner held 99 per cent. of the stock. Notwithstanding the fact that the corporation paid him $123,200 for less than one-half of the stock which he held, the petitioner, after the sale, continued to hold 98 per cent. of its stock. The reduction of the capital stock did not amount to a liquidation, for it is to be noted that the following day the capital stock was increased and the business of the corporation was continued at a profit.

"In Hyman v. Commissioner, 63 App. D.C. 221, 71 F.2d 342, 344, certiorari denied, 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669, the court speaking of section 115(g) of the Revenue Act of 1928 (26 U.S.C.A. § 2115(g) [26 U.S.C.A.Int.Rev.Acts page 385], said:

"'The purpose of Congress in the inclusion of (g) was to narrow the distinction [between liquidated dividends and dividends out of profits] to the end that corporations might not by resort to the device of stock redemption or cancellation make a distribution to its shareholders essentially resulting in a division of profits. In both the House and Senate reports, and in the conference reports, an illustration is given showing the congressional purpose. The illustration supposes, under the tax laws prior to the amendment involved here, the case of two men holding practically the entire stock of a corporation for which each paid $50,000. The corporation, having accumulated a surplus of $50,000 above its cash capital, buys from the stockholders for cash one-half of the stock held by them and cancels it, and the payment is nontaxable because it is a partial redemption of

stock. To change this result and make it taxable (g) was written and incorporated into the law. Granted the illustration is an apt one and the object sought accomplished, it will be seen how nearly it fits the facts of this case, for here we have a corporation with large accumulated earnings, which, by means of a purchase of a part of its stock, it transfers to its single stockholder, leaving the corporation precisely in the condition in which it was prior to the transfer, except that its earnings have been distributed to its stockholder without having disturbed his ownership and control of the corporation.'

"In the instant case, our conclusion is that the transaction, though in form a stock redemption, was, in fact, a distribution of earnings substantially equivalent to a cash dividend." Brown v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 73, 74, 75. Hill v. Commissioner, 4 Cir., 66 F.2d 45; McGuire v. Commissioner, 7 Cir., 84 F.2d 431.

In the Hyman case the court held the distribution of earnings to stockholders in redemption and cancellation of stock was taxable under Section 115(g) of the Revenue Act of 1928, corresponding to the section of the same number in the Revenue Act of 1934. In that case, a corporation of which taxpayer was practically the sole stockholder redeemed and cancelled substantially all of its stock. The transaction took place in 1928 when the corporation had a substantial accumulated surplus. The taxpayer, having full control of the corporation, desired to withdraw from the corporation certain accumulated earnings and eliminate any possible loss in the business of the corporation. This was accomplished by means of the redemption of a portion of his stock. The corporation in that case was not completely liquidated but continued in business.

 In the instant case for no apparent business reason, Company issued stock dividends. In 1934 and 1935 for no reason connected with its business, Company redeemed 1,740 shares of its preferred stock which was less than the amount of stock dividends issued to plaintiff. The purpose for the redemption was the desire of plaintiff to withdraw certain funds and property from Company. No one else was interested in the corporation and no creditor would be affected. The instant case comes clearly within the Statute.

It is not material what induced Company to issue the stock dividends. If any shares of stock were redeemed at such a time and in such a manner as to be essentially equivalent to the distribution of dividends the amount received by plaintiff was properly included in his gross income. There can be no doubt that in the instant case the sole purpose for the redemption or alleged sale was to get into plaintiff's hands a portion of the undistributed profits of the corporation. Plaintiff arranged to relieve company of a portion of its earnings, to cancel a few shares of stock, and continue to hold 100% of the outstanding stock of the corporation.

In this case the court finds that the cash and securities were received by plaintiff from Company during the taxable years in amounts less than Company's accumulated income, through a cancellation or redemption of its preferred stock. And further, that the stock was cancelled or redeemed at such a time and in such a manner as to make the distribution and cancellation or redemption equivalent to the distribution of taxable dividends within the meaning of the statute.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint must be dismissed.