## COMMISSIONER OF INTERNAL REVENUE
### v. BROWN (two cases).
### Nos. 4920, 4921.

Circuit Court of Appeals, Seventh Circuit.
March 22, 1934.

Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Chester A. Gwinn, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Herbert Pope, E. Barrett Prettyman, and Benjamin M. Price, all of Washington, D. C., for respondents.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

These cases are brought here by the Commissioner to reverse a holding of the Board of Tax Appeals that the redemption and cancellation of the preferred stock in question did not take place "at such time and in such manner" as to make it essentially equivalent to the distribution of a taxable dividend within the meaning of section 201 (g) of the Revenue Act of 1926, 26 USCA § 932 (g).

In 1922 there was a recapitalization of the Squire Dingee Company, the stock of which was owned by Frank B. Brown and Harry A. Brown, whereby the capital was increased from $100,000 to $1,500,000, and the stockholders exchanged their old stock, aggregating 1,000 shares of common, for 10,000 shares of new common and 5,000 shares of preferred stock. At the same time the purposes of the corporation were considerably enlarged by an amendment to its charter, and the number of directors increased from four to five. The directors' resolution of December 15, 1922, directed the officers, in case the stockholders should authorize the increase of the capital stock, "to issue stock of the company in exchange for existing stock." It also directed the exchange of the new stock "upon the surrender" of the old, and that is what happened. On May 21, 1925, the entire issue of preferred stock was redeemed at $37.32½ per share.

The Squire Dingee Company is an Illinois corporation, of which, prior to March 1, 1913, and up to and including the tax year involved, 1925, Frank B. Brown and Harry A. Brown, his brother, were the sole stockholders. The former owned 51 per cent. and the latter 49 per cent. of the stock. After the death of Frank B. Brown, respondent Pearl B. Brown was appointed executrix of his last will and testament.

Upon re-examination of the respective returns for the year 1925, the Commissioner determined deficiencies in income taxes against Pearl B. Brown, executrix, in the sum of $15,976.18, and against Harry A. Brown, in the sum of $13,405.73. Both taxpayers appealed to the United States Board of Tax Appeals. The Board filed its findings of fact and opinion, deciding and holding there was no deficiency as to either of the taxpayers for the year 1925.

The entire amount received by the taxpayers for their preferred stock in 1925 was $95,178.76 by Frank B. Brown, and $91,446.25 by Harry A. Brown.

The Board held that the issuing of the new stock in 1922 was a stock dividend, but that the redemption of the preferred stock in 1925 was not carried out "at such time and in such manner" as to make the transaction essentially equivalent to the distribution of a dividend.

The Commissioner contends that the Board properly found that the issuing of the preferred stock in 1922 was a stock dividend, but erred in finding that the redemption was not made at such time and in such manner as to make the transaction essentially equivalent to a distribution of a dividend.

It was contended by the taxpayers before

the Board that the redemption of the preferred stock was not effected at such time and in such manner as to be essentially equivalent to a taxable dividend; also, that section 201 (g) did not apply for the additional reason that the stock redeemed in 1925 had not been distributed as a stock dividend, and that section and paragraph excluded from its operation a redemption made before January 1, 1926, of stock which had not been issued as a stock dividend.

There is a grave question as to whether the redemption of the preferred stock in this case is not excluded from the operation of section 201 (d) of the Revenue Act of 1921 (42 Stat. 228), in force at the time it was issued, or section 201 (g) of the Act of 1926, 26 USCA § 932 (g), in the light of section 202 (e) (1) and (2) of the Revenue Act of 1921 (42 Stat. 230). However, in the view we take of the effect of the redemption of the preferred stock, it is unnecessary to pass upon this question.

Assuming, but not holding, that the exchange of old common for new common and preferred stock, in 1922, amounted to a stock dividend, was the redemption and cancellation of the preferred stock in the latter part of May, 1925, over two years and five months after it was issued, effected "at such time and in such manner" as to make the distribution and cancellation or redemption "essentially equivalent to a taxable dividend," under section 201 (g) of the Revenue Act of 1926 (USCA title 26 § 932 (g)?

Paragraph (h), section 201, supra (26 USCA § 932 (h), provides: "(h) As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

In the present case there was a distribution in complete cancellation or redemption of a part of the stock of the corporation, that is, all of the preferred stock.

Under subdivision (c) [26 USCA § 932 (c)] partial as well as complete liquidation distributions are to be treated as payments in exchange for the liquidated stock, and then the question arises of a taxable profit or a deductible loss.

Subdivision (g) makes an exception, but does not turn every partial liquidation into a dividend whenever there are undistributed earnings in the corporation. On the contrary, in such a case the partial liquidation is to be treated as the equivalent of a dividend only when made under certain specified circumstances. It is the time and manner of the liquidation, not the existence of undistributed earnings, which makes the distinction essentially equivalent to a taxable dividend. Subdivision (g), as originally drafted in the act of 1921, as paragraph (d), was to prevent the issuance and cancellation of a stock dividend, which is fundamentally not taxable, from being made use of as a device for the actual distribution of a cash dividend.

The thing which the act was intended to prevent is well illustrated in Huntoon v. Com'r, 14 B. T. A. 459. In that case there was the declaration of a stock dividend and a redemption took place at the same time. It was really one transaction. Laun v. Com'r, 26 B. T. A. 764, was similar to these cases. Preferred stock was issued as a dividend in 1923. In 1926 and 1927 the corporation purchased some of this stock from the two brothers who controlled the corporation. The purchase price was lower than the stated redemption price. The Commissioner claimed that the purchases amounted to dividends under section 201 (g). The Board, however, held that section did not apply, and sustained the taxpayers' contention.

The case Meyer v. Com'r, 27 B. T. A. 44, is similar in many substantial respects to the present cases. There, the entire issue of preferred stock was redeemed about three years after it had been issued as a stock dividend. An officer of the corporation had admitted in a sworn statement to the Bureau of Internal Revenue that the redemption was the equivalent of a cash dividend. The Board held that the transaction was not within section 201 (g), and the Board has held similarly in several other cases; Rorimer v. Com'r, 27 B. T. A. 871; Babson v. Com'r, 27 B. T. A. 859; Champion v. Com'r, 27 B. T. A. 1312.

The Commissioner relies upon three holdings of the Board upon this question. Huntoon v. Com'r, supra; Robinson v. Com'r, 27 B. T. A. 1018, where stock was issued in January and redemption in March; in the third case, Annie Watts Hill v. Com'r, 27 B. T. A. 73, stock dividends had been declared in 1922 and 1925, the first being preferred stock; in July, 1927, the preferred stock which had been issued as a stock dividend was redeemed, and on the same day a like amount of common stock was issued as a stock dividend. The petitioner in that case received $25,000 in redemption of 250 shares of preferred stock, and also 250 shares of new common stock as

a stock dividend, and it was under these circumstances that the Board and Court of Appeals for the Fourth Circuit held that section 201 (g) applied; that the circumstance was evidence of a continuing design and sufficient to warrant the Board in finding that the redemption was made "at such time and in such manner as to amount to the equivalent of a taxable dividend." In discussing the Hill Case in the Rorimer Case, supra, the Board said, concerning the Hill Case: "In that proceeding preferred stock was redeemed and canceled at a time when it was supplanted simultaneously in the capital structure of the corporation by a like amount of common stock. Consequently, the corporation's liability upon its outstanding capital stock was unchanged in amount because of the transaction. We, therefore, held that this fact, coupled with the existence at that time of accumulated undivided earnings available for the payment of a dividend, brought the redemption and cancellation within the provisions of section 201 (g)."

These cases are entirely different, and it appears that the Commissioner's finding of the deficiencies in question was based upon a single fact, i. e., that the entire issue of preferred stock was redeemed almost two and a half years after it was issued.

The Board discussed the facts in these cases very fully, from which we quote with approval: "The facts are devoid of circumstances to indicate artifice, and there is nothing besides the redemption itself to fortify an interpretation of it as the essential equivalent of a dividend. There was in 1922 an expansion of policy which included not merely a stock dividend, within the existing authorized capital, out of surplus, but a capitalization of new values as well as surplus, a new charter authorization of shares including new preferred redeemable at 102, with their issuance, and a new charter authorization of objects of incorporation. Cf. C. B. VI-2, p. 14. After the lapse of over two years, with no evidence of any continuing plan, the preferred shares were redeemed at $37.32½, cancelled, and eliminated from the charter, the common remaining as expanded, and the new objects being unaffected. Unless it can be said that the cash redemption itself, irrespective of the lapse of time and the absence of direct or circumstantial interrelation and of any special manner, imports a time and manner such as to constitute the substantial equivalent of a dividend, the evidence affords no reason for such a decision. The statute does not provide that every cash redemption of shares shall be treated *per se* as a dividend, but only those which because of some circumstance of time and manner are in fact the essential equivalent of a dividend. Whether this means a preconceived plan to distribute earnings, an approximation of contemporaneous conduct, a substantial restoration of the capital structure to its *status quo ante,* the issue, need not be decided now, because the evidence here arouses none of these questions."

The Board properly distinguished these cases from the case of Martha Briggs Phelps v. Commissioner, 54 F.(2d) 289, decided by this court, which was cited and relied upon by the Commissioner, stating: "There is no anticipatory arrangement to circumvent the tax or other circumstance to show that the substance was at variance with the form."

The Board was right in finding that the redemption of the preferred stock in question did not occur "at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to a taxable dividend."

The holding of the Board of Tax Appeals is affirmed.