## McGUIRE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5699.

Circuit Court of Appeals, Seventh Circuit.
June 4, 1936.

Rehearing Denied July 20, 1936.

Robert A. Littleton, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., of counsel), for petitioner.

Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

BRIGGLE, District Judge.

The Commissioner of Internal Revenue has found that Charles A. McGuire, the petitioner herein, owes a tax deficiency for the year 1930 of $51,428.31; the Board of Tax Appeals has affirmed; and the taxpayer appeals. The assessment was made under authority of section 115 (g) of the Revenue Act of 1928 (45 Stat. 822, 26 U. S.C.A. § 115 (g) and note), which reads as follows: "(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926."

The petitioner has his principal office, residence, and place of business at Richmond, Ind. In 1930 he owned 85 shares, his father Elwood W. McGuire 94 shares, and his mother, Esther McGuire, 1 share, which was all of the capital stock of the Dille & McGuire Manufacturing Company, a corporation engaged in the manufacture of lawn mowers. The company was incorporated December 11, 1880, with a capital stock of $9,000, divided into 180 shares of the par value of $50 per share. Its corporate life being for 50 years would have expired December 11, 1930.

The corporation early in its existence discovered it was undercapitalized, but its stock being closely held, the stockholders either furnished the necessary capital for its operation or permitted the profits to accumulate and to be used as a working capital. The business of the company fluctuated with the business cycle, but during the entire period from 1902 to 1930, with the exception of the years 1919 to

1922, paid annual dividends at times reaching a figure in excess of $200,000 per annum.

About 1925 the company was considering either the purchase or erection of a plant in New England in order to meet Eastern competition, and anticipating the cost of carrying out such expansion, the corporation had accumulated large sums of money from the profits of the business. With the advent of the depression in 1929, however, the project was abandoned as unfeasible.

On October 2, 1929, at a meeting of the board of directors, composed of the three stockholders, a dividend of $200,000 was declared to be paid January 2, 1930. At another meeting of the board on January 11, 1930, it was voted to retire 80 of the 180 shares of the company by the purchase of 40 shares from the petitioner and 40 shares from his father, Elwood W. McGuire, and to reincorporate with a capital of $5,000, divided into 100 shares of the par value of $50 per share. The price to be paid for the stock was fixed by the petitioner and the other directors by computing the amount of accrued profits and allocating that amount to the purchase of the 80 shares. The resultant valuation was $12,000 per share, which was later paid, Charles A. McGuire receiving approximately $480,000.

It is the contention of the petitioner that the Commissioner and the Board erred in failing to find that the $480,000 paid for the stock was accumulated with the intention that it be used for capital, and that since 1913 it had, in truth, been used to supplement the authorized capital of $9,000, and, perforce, should not be treated as the distribution of a taxable dividend.

This allocation of profits was in substantially the amount that had been conserved for the purpose of the Eastern expansion program, and the reduction in the authorized capital of the concern from $9,000 to $5,000 bore no marked relation to the company's plan of operation except as it provided a means of placing this accumulation in the hands of the stockholders. This is borne out by the petitioner, who, in response to a question as to why capitalization was reduced, said " * * * that was the manner in which we could dispose of the capital which we were not going to use for the extension as indicated * * * it seemed to me the accurate way to dispose of it * * * we had this for capital purposes and the recession that started late in 1929 indicated to us that it would be a mistake to make the extension that we had saved this money for." There was no thought at any time on the part of the stockholders and directors of a winding up and closing of the business. The conceded purpose was only a readjustment of the corporate set up and a disposition of accumulated profits.

The Board in its opinion says: " * * in the light of the record we think the company did conserve its earnings with the intent and purpose * * * to establish a manufacturing plant in the Eastern States, and abandoned the idea only after the depression struck in 1929 and it appeared unwise and inadvisable to do so. Notwithstanding such fact, it does not * * * necessarily follow that * * * the transactions in question fail to make the distribution to the petitioner 'essentially equivalent to the distribution of a taxable dividend' * * *."

We think this expression sound and the mere fact that profits have been permitted to accumulate for a definite purpose, which purpose has subsequently been abandoned and distribution made, does not brand the transaction any the less a distribution of a taxable dividend. Neither artifice, subterfuge, or bad faith need be present to bring a transaction within the meaning of the statute here involved, for as we read the law a taxpayer may well act with the utmost good purpose and without evil intent and yet his transactions may in effect be the equivalent of the distribution of a taxable dividend.

It is, of course, not every cancellation or redemption of corporate stock by the use of earnings that is taxable, but only if made at such time and in such manner as to be "essentially equivalent to the distribution of a taxable dividend." The time and manner of this distribution were distinct elements pointing to the conclusion reached by the Board.

Our attention is called to many holdings of the Board and the courts wherein distribution has been held not to be taxable under the provisions of section 115 (g), supra, and to many other holdings where they have been held to be taxable. Most of these cases are of little value in the determination of the question instantly presented, for the reason that each depends for its solution upon its own peculiar facts. No rule of construction applicable

alike in all cases can be accepted, but each case presents questions of fact to be determined in the light of all the surrounding circumstances, and whether a given case falls within or without the provisions of section 115 (g) is often a difficult question and one inviting the closest scrutiny of the trier of the facts.

Some point is also made by petitioner that the mother who owned one share of stock did not participate in the distribution and for that reason such distribution was not the equivalent of a dividend. We think this fact unimportant and in no event controlling.

We have carefully reviewed the record before us, and we find in it ample facts and circumstances pointing logically to the conclusion reached by the Board. Under such circumstances we are not at liberty to alter their judgment. Helvering, Commissioner, v. Brown (C.C.A.) 69 F.(2d) 602, Certiorari denied 293 U.S. 570, 55 S.Ct. 81, 82, 79 L.Ed. 669; Helvering, Commissioner, v. Babson (C.C.A.) 70 F.(2d) 304, Certiorari denied 293 U.S. 571, 55 S.Ct. 107, 79 L.Ed. 669. See, also, Hyman v. Helvering, 63 App.D.C. 221, 71 F.(2d) 342, Certiorari denied 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669.

The order of the Board is affirmed.