## TATE v. COMMISSIONER OF INTERNAL REVENUE (two cases).*
## Nos. 11110, 11109.

Circuit Court of Appeals, Eighth Circuit.
July 5, 1938.

*Rehearing denied Aug. 9, 1938.

George T. Priest, of St. Louis, Mo. (Robert E. Moloney and Boyle & Priest, all of St. Louis, Mo., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These are petitions to review two decisions of the Board of Tax Appeals redetermining deficiencies in the income taxes of Mrs. Jennie E. Tate and her deceased husband, Frank R. Tate, for the year 1928. The cases were heard together below, and are presented upon a single record in this court, the facts in each case being identical.

The taxpayers each owned 750 shares in the Middleton Theatre Company, a corporation. In 1928 the corporation distributed to its stockholders the sum of $731,250 of which each of the taxpayers received $121,875, which·they failed to report in their income tax returns for that year. The Commissioner of Internal Revenue added the amount of those dividends to their incomes and determined that the taxpayers were liable for additional taxes. The Board sustained the Commissioner.

■ Petitioner contends that the 1928 dividend was not taxable income to the stockholders, first, because it was a liquidating dividend and, second, because it was out of the profits of the company accrued prior to March 1, 1913. Counsel for petitioner, in his brief, declares that the principal question involved is: Is there any evidence to support the finding of the Board that the 1928 distributions were ordinary dividends? This does not fully state the issue. The Commissioner's determination was prima facie correct, and the burden was on the taxpayer to prove that it was wrong. Helvering v. Taylor, 293 U.S. 507, 515, 55 S. Ct. 287, 79 L.Ed. 623; Wiese v. Commissioner, 8 Cir., 93 F.2d 921; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569. Therefore, the decision of the Board may be affirmed either because there is evidence to support it or because there is no evidence to sustain the taxpayer's burden.

First. The Revenue Act of 1928, c. 852, 45 Stat. 791, 822, 823, Section 115, 26 U.S.C.A. § 115 provides:

"(c) *Distributions in liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in·part or full payment in exchange for the stock. * * *

* * * * * * * * *

"(h) *Definition of partial liquidation.* As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

■ Whether a dividend is a "distribution in liquidation" is a question of fact, and depends upon the intent of the directors of the corporation. Tootle v. Commissioner, 8

Cir., 58 F.2d 576; Kennemer v. Commissioner, 5 Cir., 96 F.2d 177; Holmby Corp. v. Commissioner, 9 Cir., 83 F.2d 548; Commissioner v. Straub, 3 Cir., 76 F.2d 388; Canal-Commercial Trust & Savings Bank v. Commissioner, 5 Cir., 63 F.2d 619; Gossett v. Commissioner, 4 Cir., 59 F.2d 365, rehearing denied 60 F.2d 484. It is therefore pertinent to examine the circumstances as disclosed in the record.

The Middleton Theatre Company was incorporated in 1899 with a capital of $25,000, fully paid. Mr. and Mrs. Tate each owned one-sixth of this stock, and their proportional interest in the company remained unchanged through 1928. In May, 1913, the common stock was increased to $100,000, when $60,000 new capital was received and a $15,000 stock dividend was declared. At that time $150,000 of preferred stock was created. In 1922 the capital was again increased by a $350,000 common stock dividend which was charged against surplus. In 1910 the company acquired a lease running until the year 2011 upon a parcel of land in St. Louis, and on this property it operated a theater. In 1913 the company erected a hotel on a part of the leased property not occupied by the theater. This building was leased for a ten year term to the Delmar Hotel Company.· In 1920 the company sold the theater, together with its booking franchise, to the Orpheum Circuit, Inc., for 16,422 shares of the common stock of that company. In 1923 the Theatre Company bought additional shares of the stock of the Orpheum Circuit, Inc., bringing its total holding to 19,347 shares. In the latter part of 1927 or early in 1928 the company exchanged this stock for a like number of shares of the stock of Keith-Albee-Orpheum Corporation. Prior to November 15, 1928, it sold 9345 shares of this stock and exchanged the balance for the same number of shares of Radio-Keith-Orpheum stock. On November 22, 1928, the president of the Middleton Theatre Company.·reported to its board of directors that the proceeds from these sales of stock were not needed for its business and recommended that they be distributed to common shareholders. The directors did, therefore, on that day declare a "liquidating dividend" of $162.50 per share, or a total of $731,250 "out of the capital surplus of this company existing on and before March 1, 1913."

■ Obviously this dividend was not a complete liquidation of the corporation. It could be a partial liquidation only if one

of a series of distributions in complete redemption of stock. The only evidence in the record that this distribution was of such a nature is (1) the designation given it by the board of directors and (2) the unusual size of the dividend. The largest previous dividend on the common stock had amounted to $24,000, in 1927. What a corporation may call a distribution of profits or surplus is not necessarily controlling. Kennemer v. Commissioner, supra; Gossett v. Commissioner, supra; Sanborn v. Commissioner, 8 Cir., 88 F.2d 134. So far as the record shows the Theatre Company had done nothing since 1920 except serve as a holding company, and after the dividend of 1928 it continued to serve the same function, since at that time it still held a substantial amount of stock as well as the hotel. What the company did with the hotel property after the expiration of the 10-year lease is undisclosed. An important circumstance shown by the record is that there were outstanding at the time of the alleged distribution $150,000 of preferred stock which was entitled, in case of liquidation, to payment in full at face value before any payment was made on common stock. Yet no liquidating dividend to preferred stockholders had been or was declared at that time; but on December 31st of the same year a regular $12,000 dividend was paid on the preferred stock. It has been held that the fact that the corporation is not immediately dissolved and the fact that the dividend is out of surplus do not prevent a finding that the distribution was a liquidation for tax purposes. Tootle v. Commissioner, supra; Holmby Corp. v. Commissioner, supra; Commissioner v. Straub, supra; Canal-Commercial Trust & Savings Bank v. Comissioner, supra. Nevertheless, in view of all of the circumstances, we can not say as a matter of law that the Board of Tax Appeals should have found that the 1928 dividend was a distribution in liquidation. The Board found that "petitioner's evidence fails to indicate that the Middleton Company had any definite purpose to conclude its business and dissolve." The rule is that "Such a determination of fact is not to be set aside by a court even if upon examination of the evidence it might draw a different inference." Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 70, 82 L.Ed. ——; Wiese v. Commissioner, supra.

Second. Petitioner's other contention is that the Board should have found the 1928 dividend to be a distribution of surplus accumulated before March 1, 1913. Section 115 (b) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 822, 26 U.S.C.A. § 115(b), provides: "For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113."

In order for petitioner to establish her case on this theory it was necessary for her to prove (1) that such a surplus had existed prior to March 1, 1913; (2) that such surplus had not since been dissipated, Helvering v. Canfield, 291 U.S. 163, 54 S.Ct. 368, 78 L.Ed. 706; and (3) that no more recent earnings remained to be distributed.

In order to show the existence of a surplus prior to March 1, 1913, witnesses testifying for petitioner estimated that the value of the tangible property of the company was about $350,000 or $430,000, and the value of the company's vaudeville booking contract which it had made with the Western Vaudeville Managers' Association in January 1913 was about $450,000 or $500,000. The company's auditor testified that the actual cost of the theater property and the uncompleted hotel up to March 1, 1913, was less than $260,000, while the booking contract cost nothing. The books of the company were not introduced in evidence, and no one testified as to what the liabilities of the company were. In this situation the Board was not required to infer, as does petitioner, that the surplus on March 1, 1913, was the difference between the estimated value of the property, including intangibles, and the amount of capital stock outstanding. The Board was not even obliged to accept petitioner's estimates as to the value of the assets. Dayton Power & Light Co. v. Public Utilities Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267; Gloyd v. Commissioner, 8 Cir., 63 F.2d 649. Without evidence adequate to establish the amount of the surplus of the company on March 1, 1913, the Board could not make any finding as to whether a subsequent dividend was a distribution of such surplus.

**Third.** The Board of Tax Appeals, in its opinion, observed that the record failed to establish the cost basis of the shares of stock sold in 1928. There is some evidence that the stock of Orpheum Circuit, Inc., had a market value of $32.50 when acquired in 1920, and that additional shares were purchased for $20 per share in 1923. This stock was exchanged for the stock of Keith-Albee-Orpheum Corporation in 1927 or 1928. Some of this stock was sold and some was exchanged for Radio-Keith-Orpheum shares, part of which was later sold and part retained throughout the year. Petitioner contends that all of these exchanges of stock for stock grew out of reorganizations which resulted in no taxable gain or loss under Section 112(b) (3) of the Revenue Act of 1928, 26 U.S.C.A. § 112(b) (3), and that therefore the basis of all the stock sold was the cost of the Orpheum Circuit Inc. shares. The error in this assumption is that not all exchanges of stock for stock are tax-free reorganizations. See Bus & Transport Securities Corp. v. Helvering, 296 U.S. 391, 56 S.Ct. 277, 80 L.Ed. 292; Von Weise v. Commissioner, 8 Cir., 69 F.2d 439. The record contains nothing to indicate that these exchanges were the kind that result in no taxable gain or loss. The Board was therefore unable to compute the cost of the shares traded and sold in 1928, and therefore could not find that the Commissioner's determination of the Theatre Company's 1928 income was erroneous.

**Fourth.** The evidence before the Board, far from showing the Commissioner's determination to be arbitrary and excessive, contains facts tending to sustain the Commissioner. Witnesses for petitioner testified that the books of the company, not in evidence, showed that for the period of March 1, 1913, to December 31, 1928, the Company's total "earning" had been $470,081.64, and dividends paid, out of that, exclusive of 1928 dividends, totalled $246,500. A summary statement of gains and losses of the company prepared from its federal income tax returns indicates net gain of approximately $825,000 for those years. The evidence further shows that the company's 1920 return had been disputed by the government; and that if the final determination of 1920 income, which is not in the record, approximated what the government contended it should be, then the company's net gain after March 1, 1913, exceeded a million dollars. Moreover, one of petitioner's witnesses, who had been general manager of the Western Vaudeville Managers' Association, testified that he was familiar with the earnings of the theater operated by the Middleton Theatre Company, and that such earnings ran between $80,000 and $85,000 per annum. On this basis, too, the 1913–1928 income would be in excess of a million dollars, and a distribution of $731,250 in 1928, after previous dividends of only $246,500, would not be a distribution of pre-1913 surplus because of the rule requiring dividends to be paid out of most recent earnings.

The orders and decisions of the Board of Tax Appeals are affirmed.