RHEINSTROM v. CONNER, Collector of Internal Revenue.

FIRST NAT. BANK, Cincinnati, Ohio v. SAME.

Nos. 8850, 8851.

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1942.

Jerome Goldman, of Cincinnati, Ohio (Thomas C. Lavery and A. Julius Freiberg, both of Cincinnati, Ohio, on the brief), for petitioners.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., Calvin Crawford, of Dayton, Ohio, and Frederic W. Johnson, of Cincinnati, Ohio, on the brief), for respondent.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

These cases were heard separately before the court, without a jury, but, because they arise out of the same facts, were disposed of in the same findings, and are presented on the same record on review.

On appellants' suits claiming refund of income taxes claimed to have been erroneously assessed, the District Court entered judgments in favor of the Collector of Internal Revenue.

In 1908, the Karl Kiefer Machine Company was organized as an Ohio corporation, with authorized capital of $500,000.00, consisting of 3,000 shares of common stock, with a par value of $100.00 per share, and 2,000 shares of preferred stock, with a similar par value. 1,500 shares of common stock and 420 shares of preferred stock were fully paid for, the total paid in capital, amounting to $192,000.00. Karl

Kiefer owned all of the outstanding preferred stock and 748 shares of the common stock. Minna W. Rheinstrom owned 748 shares of common stock. The remaining 4 shares of common stock were held in the names of other individuals in order to qualify them as directors. With this variously divided ownership of stock, on November 30, 1914, a reduction of capital stock from $500,000.00 to $70,000.00, was properly authorized. The preferred stock was reduced to 420 shares, which was the amount previously issued; and the common stock was reduced to 280 shares. Kiefer continued as the owner of all the preferred stock, and ownership of the common stock was equally divided between Kiefer and Minna Rheinstrom. On the books of the company, the reduction of $122,000.00, representing the reduction of 1,220 shares of common stock, was taken from the common stock account and placed in the "earned surplus" account, increasing the latter from $31,006.80 to $153,006.80. In 1921, this amount of $122,000.00 was transferred to a new account, designated as "paid in surplus"; but no actual distribution of any kind was made, and there was no physical segregation of assets, nor any other action taken in regard to the capital stock reduction until 1934. In that year, the company, in addition to the payment of a dividend of $90,000.00, distributed the $122,000.00 to the stockholders and canceled the "paid in surplus" account, designating this payment as having arisen by reduction of the common stock in 1914. Half of this sum, amounting to $61,000.00, was distributed to Minna Rheinstrom; and the other half, to the beneficiaries under the will of Karl Kiefer. It appears that the earnings for the year 1934 were more than sufficient to pay the $90,000.00 dividend and the above mentioned sum of $122,000.00.

On October 1, 1937, Minna Rheinstrom died and the Collector of Internal Revenue assessed her estate on the amount of $61,000.00 on the ground that it was subject to income tax as a dividend. A similar tax was assessed against the estate of Karl Kiefer. The executor under the will of Minna Rheinstrom, and the trustee under the will of Karl Kiefer, sued for a refund of the tax so assessed and collected, claiming that the distribution of the sum of $122,000.00 was not a dividend, but a return of capital on partial liquidation, or the payment of a debt owed by the corporation to its shareholders. The first question to be determined is whether the distribution of

the amount of $122,000.00, to Minna Rheinstrom and the beneficiaries under the will of Karl Kiefer, was actually a dividend or a return of capital on partial liquidation. If it was a dividend, it is taxable.

The term "dividend," as used in the 1934 Revenue Act, in so far as here applicable, means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits, accumulated after February 28, 1913 (§ 115(a), 26 U.S.C.A. Int.Rev. Acts, page 703); and every distribution is presumed made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits (§ 115(b).

The Act further provides, however, in § 115(c), that where amounts are distributed in complete liquidation of a corporation, they shall be treated as in full payment in exchange of stock; and where amounts are distributed in partial liquidation of a corporation, they shall be treated as in part or in full payment in exchange for stock. In so far as this controversy is concerned, it is provided that in the case of amounts distributed in partial liquidation, the part of such distribution which is properly chargeable to capital stock, is not considered a distribution of earnings or profits within the meaning of § 115(b). In other words, that part of an amount distributed in partial liquidation of a corporation, *which is properly chargeable to capital stock,* is not considered a distribution of earnings or profits to the extent thereof, and from the most recently accumulated profits (§ 115(c); and it is provided that the general definition of a dividend in § 115(a) is not intended to apply to distributions made to stockholders in the liquidation of a corporation, but that it was intended that such distributions should be governed by § 115(c). But if a corporation cancels or redeems its stock at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part, essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings accumulated after February 28, 1913, shall be treated as a taxable dividend (§ 115(g).

As used in the statute, the term "amounts distributed in partial liquidation" means a distribution by the corporation in complete cancellation or redemption of a part of its

stock or one of a series of distributions in complete cancellation or redemption of all, or a portion of its stock. See § 115(i).

We come, therefore, to the consideration of that part of a distribution in partial liquidation, which is properly chargeable to capital stock; and whether the distribution, in this case, was a redemption of stock at such a time and in such a manner as to be essentially equivalent to the distribution of a taxable dividend. With regard to whether a redemption of stock is essentially equivalent to the distribution of a taxable dividend, this depends upon the circumstances of each case, and under the statute, consideration must be given to the time at which and the manner in which the redemption is made. Commissioner v. Champion, 6 Cir., 78 F.2d 513.

On these questions it is held that the Commissioner's determination is prima facie correct and the burden is on the taxpayer to prove that it was wrong. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Wiese v. Commissioner, 8 Cir., 93 F.2d 921; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; Tate v. Commissioner, 8 Cir., 97 F.2d 658.

With regard to the proposition before us, the many adjudications have resulted in some difficulty in distinguishing the various statements therein found. See Patty v. Helvering, 2 Cir., 98 F.2d 717; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; certiorari denied 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669. Aside from certain conflict, however, it can be said that a degree of apparent contradiction has resulted from the language of the statute, respecting a somewhat abstract area of corporate finance, as well as because of the great diversity of factual situations presented in the cases.

Whether a dividend is a distribution in liquidation, is held to be a question of fact; and one of the factors to be considered, is the intent of the directors of the corporation. Tate v. Commissioner, supra; Tootle v. Commissioner, 8 Cir., 58 F.2d 576. It is also said that it is the effect of the distribution which classifies it, and not the motives of the taxpayer or corporation. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; Smith v. United States, 3 Cir., 121 F.2d 692.

In Commissioner v. Champion, 6 Cir., 78 F.2d 513, a decision of the Board of Tax Appeals, holding that a distribution in redemption of stock was not essentially equivalent to the distribution of a taxable dividend, was affirmed. It appeared that an increase in capital stock anticipated improvements in business, which failed to materialize, and, instead, the corporation business declined. The court held that there was a reasonable inference that the shrinkage in the business brought the corporation to the realization that the capital was in excess of its needs, and to that extent, unprofitable, and that good business judgment might naturally suggest a redemption of stock proportionate to the decline in business.

In Flanagan v. Helvering, supra, it was said that neither the courts nor the Board of Tax Appeals have laid down a sole decisive test to determine whether a transaction is equivalent to a taxable dividend or a partial liquidation, under the statutory provisions here under consideration. In that case the factors considered by the court in arriving at its determination that a distribution was taxable as a dividend, were that the major part of the capitalization of the corporation represented former earnings; only two relatively small dividends were ever paid; the proportional ownership of the shareholders was not changed; the corporation did not manifest any policy of contraction; the initiative for the corporate distribution came from a stockholder who needed cash; and the corporation continued to operate at a profit.

In McGuire v. Commissioner, 7 Cir., 84 F.2d 431, certiorari denied 299 U.S. 591, 57 S.Ct. 118, 81 L.Ed. 435, where a taxpayer and his father owned all but one share of stock of a corporation, which accumulated a large sum from profits for a plan of expansion, and, after abandoning such plans, retired almost half the shares for a price computed by allocating accrued benefits thereto, the transaction was held equivalent to a distribution of a taxable dividend, even though the taxpayer's mother, who owned one share, did not participate. It was held that the reduction bore no marked relation to the company's plan of operation, and, in deciding the case, the court observed the great variety of opinion on the question, and remarked that most of the cases were of little value in the determination of the issue, as each depended upon its own peculiar facts; and whether a given case falls within or without the provisions of § 115(g), is often a difficult question and one inviting the closest scrutiny of the trier of the facts. In Goldstein v. Commissioner, 7 Cir., 113

F.2d 363, among the relevant factors which the court took into consideration, were the large size of the surplus, the great earnings, and the question of why a cash dividend had not been declared.

In the following cases, distribution was held not taxable: where a reduction of stock and distribution was made by a corporation, when its business had become less profitable and had continued to decline, and the purpose of the reduction was to bring it more in line with actual conditions, rather than a cloak for the payment of dividends [Commissioner v. Cordingley, 1 Cir., 78 F.2d 118]; where expansion had proved unprofitable, and a partial liquidation of a corporate enterprise and its subsidiaries had begun [Commissioner v. Babson, 7 Cir., 70 F.2d 304]; where reduction resulted from sincere motives on the part of the directors, to meet corporate needs in fair business objectives [Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156]; and where several parties, associated with the corporation, had died, business had declined, stockholders had directed activities toward winding up the business, and although the company continued in operation, its scope was steadily narrowed. Commissioner v. Straub, 3 Cir., 76 F.2d 388. See Kelly v. Commissioner, 2 Cir., 97 F.2d 915.

In Leland v. Commissioner, 1 Cir., 50 F.2d 523, it is held that there is a conclusive presumption that every distribution by a corporation to its stockholders is made from the most recently accumulated earnings, when the corporation had earnings accumulated since February 28, 1913, and available for distribution; although that case involved a distribution in which there was no reduction of stock. To the same effect, see Douglas v. Edwards, 2 Cir., 298 F. 229; Edwards v. Douglas, 269 U.S. 204, 46 S.Ct. 85, 70 L.Ed. 235.

In Baker v. Commissioner, 2 Cir., 80 F.2d 813, it was held that a distribution to a stockholder was a taxable dividend, although it represented, in part, proceeds of sale of capital assets of a subsidiary, where it appeared that the corporation had earnings and profits accumulated since February 28, 1913, exceeding the amount distributed. Section 201(a) (b) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 146. In Faris v. Helvering, 9 Cir., 71 F.2d 610, under provisions of § 201(a) (b) of the Revenue Act of 1921, 42 Stat. 228, which, for purposes herein, are the same as § 115(a) (b) of the Revenue Act of 1934, it was held that if a corporation had on hand any undistributed earnings or profits accumulated since February 28, 1913, payment of distribution made pursuant to the authorization by a State Commissioner of Corporations to distribute $200,000.00 of its capital assets, must be deemed to be made out of the earnings on hand.

It is held that a dividend can be a partial liquidating dividend only if it is one of a series of distributions in complete redemption of stock; and the fact that the corporation is not immediately dissolved and the fact that the dividend is declared to be paid out of surplus, do not prevent a finding that the distribution was a liquidating dividend, as far as taxpayers are concerned. Tate v. Commissioner, supra; Tootle v. Commissioner, supra. But a finding that the taxpayer's evidence fails to indicate that the corporation had any definite purpose to conclude its business and dissolve, justifies the conclusion that such a distribution is a taxable dividend. Tate v. Commissioner, supra. However, in other cases, it is held that it is unnecessary that a corporation be planning a cessation of business or be in the process of final liquidation in order that a distribution be considered a liquidating dividend. Commissioner v. Cordingley, supra; Commissioner v. Quackenbos, supra. See Kelly v. Commissioner, supra.

In Commissioner v. Brown, 7 Cir., 69 F.2d 602, it was held that it is the time and manner of the liquidation, not the existence of undistributed earnings, which makes it essentially equivalent to a taxable dividend. The court stated that subsection (g) does not turn every partial liquidation into a dividend whenever there are undistributed earnings in the corporation; but that this section was to prevent the issuance of a stock dividend, which is fundamentally not taxable, from being made use of as a device for the actual distribution of a cash dividend.

In Hyman v. Helvering, supra, in discussing the distinction between taxable dividends and distributions in liquidation, and commenting upon the intent of Congress in carrying out its objective of taxing certain distributions, even in cases where there was a corresponding redemption of stock, the court said [63 App.D.C. 221, 71 F.2d 343]:

"But, in our view, the answer within the intendment of (g) turns not so much upon the question of whether there was or was

not liquidation as upon the result. That is to say, if the distribution and cancellation, viewed fairly, made it essentially equivalent to a distribution of profits, it is taxable. The Commissioner and the Board have both held that what occurred was essentially equivalent to a distribution of profits. * * * Undoubtedly the tax law recognizes a distinction between liquidating dividends and dividends out of profits, and provides a different basis on which to tax them. The purpose of Congress in the inclusion of (g) was to narrow the distinction to the end that corporations might not by resort to the device of stock redemption or cancellation make a distribution to its shareholders essentially resulting in a division of profits. In both the House and Senate reports, and in the conference reports, an illustration is given showing the congressional purpose. The illustration supposes, under the tax laws prior to the amendment involved here, the case of two men holding practically the entire stock of a corporation for which each paid $50,-000. The corporation, having accumulated a surplus of $50,000 above its cash capital, buys from the stockholders for cash one-half of the stock held by them and cancels it, and the payment is nontaxable because it is a partial redemption of stock. To change this result and make it taxable (g) was written in and incorporated into the law."

In this case, the earnings of the company for the years 1910 to 1913, inclusive, were $148,000.00, on a capital of $192,000.00 —out of which dividends of $87,000.00 were paid. In 1934, when the alleged distribution of $112,000.00 in liquidation was made, the company also paid $90,000.00 in dividends; and, after both distributions, had a remaining surplus of approximately $370,000.00. The 1934 profits exceeded those of 1933, and there were substantial dividends every year from 1914 to 1934.

In considering the foregoing, we here mention a further contention of appellants—that the distribution was merely the payment of a debt due the stockholders. This claim is based upon the contention that, at the time of the reduction in stock, the amount represented by the deduction was payable to the stockholders, and that payment thereof was made by the distribution in 1934. The circumstances, however, of transferring in 1914, the amount involved, from the common stock account to earned surplus, and keeping it in such account until 1921, when it was entered as "paid in surplus," is evidence from which reasonable inferences could be drawn that it was not intended to be a distribution in liquidation; and while bookkeeping entries are not conclusive, they are circumstances to be taken into consideration in determining whether it was a real liquidation or a dividend. The same observation applies to the circumstance that the entire amount was left untouched by the stockholders for 20 years, all this time, unsegregated and working in earning dividends, further giving rise to the inference that the cancellation of the stock was merely a bookkeeping entry and that the transaction was intended to leave the corporate assets and the proportionate stock ownership virtually untouched. See Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A. L.R. 1570. Furthermore, there remains, under this contention of appellants, application of the presumption that any distribution, other than in liquidation, is a dividend. Appellants cite Weaver v. Commissioner, 9 Cir., 58 F.2d 755. That case involved a distribution of funds that the stockholders paid in as contributed surplus. When repaid, it was held to be a return of capital. No stock was involved; the stockholders merely received back their advance. The difficulty in reconciling the grounds of decision, with the language of the statute, can afford appellants no support in the disposition of an entirely different problem. The decision, while bearing upon the contention above discussed, is not applicable to the facts here.

Appellants claim that the court erred in rejecting certain proffered testimony as to the purpose of the reduction of stock in 1914. This was to the effect that it was decided to make free for the stockholders, a large portion of the then paid in capital, as it was considered the company was over-capitalized; it was sought to be shown by appellants that it was determined to reduce the capital stock for the purpose of creating a fund which would be available to the stockholders at any time they wished to draw therefrom; and that they could borrow from the bank on the company's credit to the extent of this fund, which, otherwise, they had no right to do. The court permitted appellants to make a proffer of the proposed testimony, but refused to admit it in evidence, although the claims with reference thereto were mentioned in the court's findings.

796

With regard to the claimed error of the court in excluding this testimony, appellants were permitted to make the proffer. The court considered the evidence in its findings; and it is to be observed that, on the trial, when the court indicated that the testimony was inadmissible, counsel for appellants stated that he did not think that the proffer or the evidence was necessary, "because, as a matter of law, the effect of the reduction as stated was the same as the purpose the stockholders had in making it." Under all of the circumstances, we are of the opinion that, if it be assumed that such testimony was admissible, the exclusion was harmless.

Many of the criteria heretofore relied upon by the courts to sustain the holding that a distribution was a dividend, are here present. The corporation continued to operate at a profit and manifested no policy of contraction (Flanagan v. Helvering, supra); there were a large surplus and continued profits each year after 1914 until the distribution in 1934 (Goldstein v. Commissioner, supra); earnings and profits accumulated since 1913, exceeded the amount distributed (Baker v. Commissioner, supra). There was no declining of corporation business, and no proof of reasonable grounds to conclude that the capital was in excess of the company's needs, as in Commissioner v. Champion, supra; nor did there appear any prudent business reasons to reduce the capitalization by the cancellation of stock (Hyman v. Helvering, supra); and there was nothing to indicate that a liquidation or winding up of the business was contemplated. The transaction does not appear to have borne any marked relation to the company's plan of operation, and no reasonable business need appears to have been accomplished.

It is claimed that the reduction gave the holder of the preferred stock a larger right to share in assets of the corporation on final liquidation. Under the evidence, with regard to the effect of the reduction of the common and preferred stock, in this case, that may be conceded. It is one circumstance to be taken into account, but it is not conclusive; and the reduction of stock was proportionate in the important right to share in dividends on common stock.

It is unnecessary to suggest further circumstances that existed, or did not exist, in order to pass upon the correctness of the conclusion of the District Court.

Those mentioned above, are only some of the many situations that may be considered in arriving at a determination of whether the distribution was properly chargeable to capital account, or was essentially equivalent to the distribution of a taxable dividend. The question, here, was whether the distribution was made primarily from the standpoint and concern of the corporate business, or primarily for the purpose of benefiting stockholders by means of a dividend, disguised as a payment of a debt or as a distribution in liquidation. The burden was upon appellants to prove that the determination was wrong; and they have failed to establish their claim. The evidence sustains the finding that the distribution was a taxable dividend.

The judgments of the District Court are affirmed.