**JONES, Collector of Internal Revenue, v. DAWSON.**

No. 3049.

Circuit Court of Appeals, Tenth Circuit.

March 5, 1945.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and S. Dee Hanson, all of Washington, D. C., and Charles E. Dierker, of Oklahoma City, Okl., on the brief), for appellant.

Charles H. Garnett, of Oklahoma City, Okl., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The question presented by this appeal is whether distributions made to the taxpayer during the taxable year 1936 as a stockholder of the Dawson Produce Company, in pursuance of a plan of liquidation, duly adopted but never fully consummated, should be treated as liquidating dividends under Section 115(c) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 868, and therefore taxable under Section 111, as held by the trial court, and if not, whether such distributions were nonetheless a nontaxable return of a capital investment. If they are not liquidating dividends within the meaning of Section 115(c), or represent a return of capital investment, they are ordinary dividends and taxable as such in accordance with the determination of the Commissioner.

By a resolution of its Board of Directors on January 11, 1936, the Dawson Produce Company authorized, and on the same date the Board of Directors declared, a 10 per cent dividend in the total sum of $32,650 "payable from the profits and surplus account to stockholders on record December 31, 1935," to be paid on or before February 1, 1936. At the same meeting, the stockholders adopted a resolution to appoint a committee to "conduct and conclude the legal and financial steps and arrange for sale or transfer of property needful to conclude and end the corporation, Dawson Produce Company, on or before June 30, 1936," the date on which its corporate charter would expire. During the month of January 1936, the taxpayer as owner of approximately 32 per cent of all the stock of the Corporation received a dividend check dated December 31, 1935, in the amount of $10,510. After the distribution of this 10 per cent dividend in the amount of $32,650 from the 1935 earnings, there remained in the surplus account as of December 31, 1935, the sum of $11,057.52.

On the following April 20th, the Board of Directors, acting on the recommendation of the liquidating committee, authorized its officers to transfer to the stockholders of record April 1, 1936 their proportional part of a certain oil and gas royalty and "in-oil" payment belonging to the corporation. The agreed value of the oil royalty for income tax purposes was $13,675.78, and of the "in-oil" payment interest $11,871.33. During the calendar year 1936, the taxpayer received his distributive share of the royalty interest in kind having an agreed market value of $4,402.22, and of the "in-oil" payment in kind having an agreed market value of $3,821.37. At a meeting on June 17, 1936, the stockholders authorized the distribution of "taxable surplus and undivided profits on which Federal tax has been paid, as a liquidating dividend to stockholders of record as of June 1,

1936," and by separate resolution on the same date authorized the distribution as dividends the "accumulated profits to June 1, 1936 * * * less Federal tax * * * equivalent to approximately seven or eight per cent." Accordingly the Board of Directors declared a 10 per cent dividend in the total sum of $32,650 from the undivided surplus and profits as authorized by the stockholders, and a 7 per cent dividend in the total sum of $22,855, to all stockholders of record on June 1, 1936, to be paid on or before the 15th of July as also authorized by the stockholders. Pursuant to this action by the Board of Directors, the taxpayer received during 1936 a dividend check in the sum of $10,510 representing his distributive share of the 10 per cent dividend, and a check for $7,357 representing his distributive share of the 7 per cent dividend, making a total of $17,867 in cash dividends, and $8,223.59 dividends in kind distributed to the taxpayer during 1936 (exclusive of the $10,510 representing the 10 per cent dividend from 1935 earnings).

On June 29, 1936, the liquidating committee reported that: "Your committee appointed to conduct and conclude the legal and financial steps and arrange for sale or transfer of property needful to conclude and end the corporation, Dawson Produce Company, on or before June 30, 1936, reports that it is unable to reach an agreement as to further steps to accomplish the above object. The majority of the committee agreed upon an equitable plan but does not care to force it upon the minority." Thereupon a resolution was adopted authorizing a renewal of the charter for another twenty years, and on the same date the taxpayer sold all of his stock in the Corporation to A. Schuler, and the name of the Corporation was changed to the Schuler Fruit Company.

In his income tax return for 1936, the taxpayer treated the cash distributions as liquidating dividends under Section 115(c), and as such applicable to the cost of his stock under Section 111, and the "in kind" distributions consisting of the oil royalty and "in-oil" payment as having no market value at the time of the distribution, hence no taxable gain thereon. Although the record does not conclusively so reflect, it is apparent that the Commissioner determined that all of the distributions were ordinary dividends and assessed a deficiency accordingly. K. W. Dawson, the taxpayer, died on December 16, 1938, and Arthur Kaye Dawson, as executor of his estate, filed claim for refund, contending that the "in kind" distributions from the oil royalty and "in-oil" payment had no market value, and were not subject to valuation at the time they were distributed as a dividend; that the Commissioner had erroneously treated the estimated value of the respective dividends as taxable income to the taxpayer; that the cash distributions received from the Dawson Produce Company were liquidating dividends and therefore applicable to the cost of his stock in determining net gain. When the claim for refund was denied, this suit was brought by the executor to collect the deficiency on the same theory.

Upon the stipulated facts, the trial court held (1) that the "in-kind" royalty and "in-oil" payment distributions in the total sum of $8,223.59, when distributed to the taxpayer, were includable in his gross income for the taxable year; (2) that on January 11, 1936, the Dawson Produce Company in good faith adopted a plan for its liquidation; (3) that the "in kind" dividends in the sum of $8,223.59, and the 7 per cent cash dividend of $7,357 declared on June 17, 1936, were liquidating dividends made in partial liquidation of all of the stock of the Corporation, and that the said distributions in the total amount of $15,-580.59 should be applied in reduction of the taxpayer's cost of his stock in the determination of taxable gain. The court made no specific findings in respect to the two 10 per cent dividends in the amount of $21,020 other than to hold that all other claims except those allowed as liquidating dividends were "barred from refund by limitations when the plaintiff's claim for refund" was filed with the Commissioner.

With immaterial exceptions, the term "dividend" as used in the Revenue Act of 1936, Section 115(a), means any distribution by a corporation to its shareholders out of its earnings or profits accumulated after February 28, 1913, without regard to the amount of the earnings and profits at the time the distribution was made. Vol. 1, Mertons Law of Income Taxation, Sec. 9.04, p. 429, and Sec. 9.29, p. 460; Paul Mertons 1938 Supp., Sec. 8.02, p. 209; Seidman's Federal Income Tax Laws, p. 245. And every distribution is presumably out of earnings or profits to the extent thereof, and from the most recently accumulated, earnings or profits. Section 115(b). However, consistently with the

fundamental concept of income, Section 115(c), provides that amounts distributed by a corporation to its stockholders in complete liquidation of a corporation shall be treated as in full payment of the surrendered stock, and similarly amounts distributed to stockholders in partial liquidation of a corporation shall be treated as part or full payment of the surrendered stock. In each case, the gain or loss to the distributee resulting from such exchange shall be determined by applying the amounts of the distributions to the cost basis of the surrendered stock as provided in Section 111 of the Act.

"Complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation, under which the liquidation is to be completed within a time specified in the plan. Amounts distributed in "partial liquidation" are specifically defined as distributions by a corporation (1) in complete cancellation or redemption of a part of its stock, or (2) one of a series of distributions in complete cancellation or liquidation of all or a portion of its stock. Section 115(i). Amounts so distributed in "partial liquidation" which are properly chargeable to capital account shall not be considered a distribution of earnings or profits under Section 115(b). Rheinstrom v. Conner, 6 Cir., 125 F.2d 790, certiorari denied 317 U.S. 654, 63 S.Ct. 49, 87 L.Ed. 526. However, it is the substance of the transaction which determines taxability, and if a corporation cancels or redeems its stock at such time and in such manner as to make the transaction in whole or in part essentially equivalent to the distribution of ordinary taxable dividends, it shall be so treated to that extent. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; Rheinstrom v. Conner, supra; Paul Mertons, Vol. 1, Sec. 8.91 and 9.95; Mertons, Sec. 9.82 and 9.83. It is said that the question whether a dividend is a distribution in liquidation is one of fact to be judged by substance rather than form—by the ultimate effect of the distribution and not by the motives of the taxpayer or the corporation. Beretta v. Commissioner of Internal Revenue, 5 Cir., 141 F.2d 452, certiorari denied 65 S.Ct. 50; Rheinstrom v. Conner, supra; Tate v. Commissioner of Internal Revenue, 8 Cir., 97 F.2d 658, certiorari denied, 305 U.S. 639, 59 S.Ct. 106, 83 L.Ed. 412; Flanagan v. Helvering,

supra; Tootle v. Commissioner of Internal Revenue, 8 Cir., 58 F.2d 576; Mertons, Vol. 1, Sec. 9.82 and 9.83.

Whether the plan is for complete or partial liquidation, the distributions must be made in complete redemption of all or a portion of the stock, and distributions which do not actually result in the redemption or cancellation of the corresponding stock of the corporation cannot be considered as "liquidating dividends" within the meaning of Section 115(c), although such distributions may exceed the surplus and invade the capital account. Mertons, Vol. 1, Sec. 9.83, p. 549, and cases cited. Cf. Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379; Malone v. Commissioner of Internal Revenue, 5 Cir., 128 F.2d 967; Hill v. Commissioner of Internal Revenue, 5 Cir., 126 F.2d 570; Bynum v. Commissioner of Internal Revenue, 5 Cir., 113 F.2d 1.

As the trial court found, the stockholders adopted a bona fide plan for the liquidation and dissolution of the Corporation before its charter expired on June 30, 1936, and undoubtedly all of the distributions ordered between January 11 and June 17, 1936, were in contemplation of complete liquidation and dissolution of the Corporation. But when the parties were unable to agree upon a final plan of liquidation, the charter was renewed and the taxpayer sold his stock to parties who apparently continued to conduct the affairs of the Corporation. None of the stock was cancelled or redeemed in accordance with the plan of liquidation and as required by the statute, therefore none of the distributions can be treated as "one of a series" of distributions made by the Corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan, nor can they be treated as a series of distributions in complete cancellation of a portion of its stock as defined in Section 115(i).

The appellee virtually concedes that these distributions cannot be treated as liquidating dividends within the literal meaning of Section 115(c) and (i), but seeks to sustain the judgment of the court by arguing that the distributions involved were paid out of capital and not out of surplus and profits, and it is therefore immaterial whether they were in fact "liquidating dividends" within the meaning of the statute, or simply dividends distributed out of capi-

tal, because in any event they were non-taxable and applicable to the reduction of the cost basis of the stock.

 It is of course fundamental that distributions by a corporation are taxable dividends only to the extent that they are derived from earnings and surplus, and to the extent that the distributions represent a return of capital investment, they are of course nontaxable. It follows therefore that accumulated earnings and profits of a corporation must be equal to or in excess of the amount of the distributions made within such year in order to constitute such distributions taxable dividends. Where however, a corporation has available sufficient earnings and profits, any distributions to the stockholders will "for tax purposes be deemed from earnings instead of from capital assets". Beretta v. Commissioner of Internal Revenue, supra; Flanagan v. Helvering, supra.

To summarize, on the record the Corporation's income tax return for the year 1936 reflected a net income of $62,466.06, which together with the surplus of $11,057.52 as of December 31, 1935, made a total of $73,523.58 surplus and net earnings conceivably available for dividends, while the sum of the cash distributions ($32,650+$22,855=$55,505), and the "in-kind" distributions ($13,675.78+$11,871.33=$25,547.11), amounted to $81,052.11 (exclusive of the $32,650.00 declared January 11, 1936, as of December 31, 1935, out of 1935 surplus). Accordingly, the taxpayer has submitted an exhibit containing computations based upon a tendered formula which, if acceptable, tends to prove his contentions to the effect that the distributions were made from capital and not from accumulated earnings and surplus. But this submitted exhibit also shows that at the end of the calendar year 1936, and after all authorized distributions were made, there remained in the surplus account the sum of $11,812.12, which was unencumbered by any distributions. According to the minutes of the stockholders' meetings, the 10 per cent dividend in the total amount of $32,650 declared on June 17, 1936, was authorized and paid out of "taxable surplus and undivided profits," and the 7 per cent cash dividend in the amount of $22,855 was authorized and paid out of "accumulated profits to June 1, 1936." Furthermore, the available surplus and net earnings for 1936 ($73,523.58) were more than sufficient to pay the cash dis-

tributions ($55,505) chargeable to 1936 surplus and earnings.

In view of these committals, we think the taxpayer has failed to show that the capital structure of the Corporation was in any way contracted or impaired by these distributions. In any event, we do not think that the taxpayer has overcome the legal presumption that the cash dividends were from the most recently accumulated earnings and profits, and not from capital account. There is nothing on this record to show how or in what manner the royalty and "in-oil" payments were carried on the books of the Corporation. In the claim for refund, it was shown by the taxpayer that they had no present market value, and on this record we may assume that they were so treated on the books of the Corporation.

The judgment is reversed with directions to dismiss the action.