## HILL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3459.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

Edmund B. Quiggle, of Washington, D. C. (William W. Sledge, of Durham, N. C., on the brief), for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and W. R. Lansford, Sp. Atty., Bureau of Internal Revenue, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

ERNEST F. COCHRAN, District Judge.

The petition to review the decision of the Board of Tax Appeals in this case raises the question whether the sum of $25,000, received by the taxpayer from Union Bleachery, a South Carolina corporation, in the year 1927, should be considered a dividend under section 201 (g) of the Revenue Act of 1926, 44 Stat. 10, 11 (26 USCA § 932 (g), or a distribution in partial liquidation of the corporation, under section 201 (c) of that act (26 USCA § 932 (c).

Union Bleachery was incorporated on or about July 1, 1922, with an authorized capital stock of the par value of $400,000. On December 29, 1922, an increase of the capital stock of the corporation from $400,000 to $1,200,000, to consist of an issue of preferred stock of the par value of $800,000, was duly authorized by the stockholders. At the same time the directors were authorized to declare a stock dividend of 100 per cent., being $400,000, to the stockholders of record on December 30, 1922, payable in preferred stock of the corporation. The remaining $400,000 of authorized preferred stock was to remain in the treasury of the corporation subject to the further orders of the board of directors. On September 12, 1922, the petitioner acquired by inheritance 250 shares of the common stock having a value at that time of $100 per share, or a total of $25,000. On Decem-

ber 30, 1922, the board of directors declared a dividend of 100 per cent. on its common stock, then of the aggregate par value of $400,000 payable in preferred stock, and the petitioner received 250 shares of preferred stock as a dividend on the said 250 shares of the common stock previously acquired and then owned by her. Said preferred stock was entitled to dividends at the rate of 8 per cent. per annum, payable semiannually, and was redeemable by the corporation at any dividend period after two years on payment of its par value, together with all dividends then accrued and unpaid thereon, in such manner and upon such notice as the board of directors might determine for the redemption thereof. It was also provided that, except with the consent of the holders of 75 per cent. of the preferred stock, no mortgage or lien should be placed on the real estate, plant, or equipment of the company; no bonds, notes, debentures, or other similar evidence of indebtedness maturing later than five years should be created or guaranteed; and no stock ranking ahead of or equally with said issue of preferred stock should be issued.

On October 31, 1925, a further stock dividend of 100 per cent., payable in common stock of the corporation of the aggregate par value of $400,000, was declared. As her share of this dividend, the petitioner received common stock of the par value of $25,000.

On April 26, 1927, the board of directors of Union Bleachery passed a resolution that all of its said preferred stock be redeemed and retired on July 1, 1927, and at the same time the board resolved that a stock dividend of 50 per cent. upon the common stock of the corporation, payable in common stock, to all common stockholders of record as of July 1, 1927, be declared. Pursuant to this resolution, the petitioner on or about July 1, 1927, surrendered the certificate for 250 shares of preferred stock held by her, and received in return therefor the amount of $25,000 in cash.

In her income tax return for the calendar year 1927, filed under the Revenue Act of 1926, the petitioner included as capital gain from the redemption of said 250 shares of preferred stock of Union Bleachery the amount of $16,666.65, representing the difference between the sum of $25,000 received by her in the redemption of the stock, and that portion (amounting to $8,333.35) of the cost basis of 250 shares of common stock acquired by her in September, 1922, which was allocated by her to said 250 shares of preferred stock.

On December 31, 1922, after the issuance of the stock dividend, the undivided profits of the company amounted to $432,284.68; and on December 31, 1926, to $731,584.52; and on December 31, 1927 (after the issuance of the stock dividend) to $462,641.85; without considering certain reserves established, which may or may not have been proper appropriations of surplus. Each year from 1922 to 1927, both inclusive, the corporation paid cash dividends ranging from $36,000 to $40,000 a year.

The corporation was not in process of dissolution at the end of 1927 or at any subsequent date.

The Commissioner of Internal Revenue made a determination, later approved by the Board on appeal, that the income tax return for the year 1927 showed a deficiency of $2,726.65 in the tax liability on the ground that the sum of $25,000, received by the taxpayer in that year, was equivalent to the distribution of a cash dividend within the meaning of section 201 (g) of the act, which is as follows: "If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after January 1, 1926."

The taxpayer, on the other hand, contends that the sum of $25,000 represents an amount distributed in partial liquidation of the corporation under sections 201 (c) and 201 (h) of the act, which are as follows:

"(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 933 [202], but shall be recognized only to the extent provided in section 934 [203]. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of subdivision (g) of section 934 [203] of stock or

securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation. * * *

"(h) As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

■ We think that the decision of the Board of Tax Appeals must be affirmed. It is true, as the taxpayer contends, and the Board found, that there is no evidence to show that the issuance and redemption of the stock were conceived in the beginning as parts of a single plan to distribute surplus, which otherwise would be paid to the stockholder in the form of dividends, but, as the Board correctly said, this is not the only test for determining whether a distribution of corporate funds falls within section 201 (g) of the act. The Board said: "But the search for a relationship between the issuance of the stock and its redemption, evidencing a continuing, unified plan to distribute surplus, is not the sole test to which a distribution, coupled with a redemption, may be subjected, and it may fall within the statute even in the absence of those elements. The statute invites scrutiny to the time and manner of the cancellation or redemption of stock. It makes no requirement that the issuance and redemption be related; indeed, under its terms, the manner of the issuance (whether or not as a dividend) is not material. Consequently, we must also scrutinize the redemption and distribution with respect to the time and manner when they occur, and the circumstances surrounding them at that time. With that in mind, it is quite apparent that a redemption and distribution may fall within the statute although, at the time the stock was issued, there was no intention to later redeem it as a means of surplus distribution, no plan to avail of such method as a device by which to circumvent the usual tax upon dividends. Thus a stock originally issued, either for payment or as a dividend, as a part of the financial plan of the corporation may be used afterward for the ends sought to be prevented by this section of the statute."

■■ It is obvious that, in order to determine whether a redemption of stock by a distribution of the assets of the corporation falls within the purview of section 201 (g), it is necessary to ascertain whether the redemption takes place at such time and in such a manner as to make it equivalent to the distribution of a taxable dividend. The Board dealt with this question in the following language: "In the case at bar there is no proof of the existence of a relation between the issuance and redemption of the preferred stock evidencing a continuing, unified plan to distribute surplus, nor can we, as respondent urges, reasonably infer its existence from the facts before us, but scrutiny of the time and manner of the redemption or cancellation (in this case, both) of the stock convinces us that they, and the resultant distribution, were essentially equivalent to a taxable dividend. The preferred stock was redeemed at a time when it was supplanted (simultaneously) by an issue of common stock in like amount. Consequently, the company's liability upon its outstanding capital stock was unchanged in amount. The manner of its redemption was by payment in cash, as was the manner of the distribution. The time of the distribution was when the substitution of stock classes occurred and when the company had a substantial amount of accumulated undivided earnings, available, so far as this record discloses, for distribution. In our opinion, this case falls fully within the provisions of section 201 (g) and the cancellation and redemption of stock and the distribution to the stockholders are precisely of the sort the Congress intended this section of the statute to control; an opinion which finds support in the committee discussions, prior to enactment, concerning the wording of the section."

The facts, which were stipulated, amply support this conclusion of the Board.

For the reasons stated, the decision of the Board will be affirmed.

Affirmed.