## SMITH v. UNITED STATES.
### No. 7652.

Circuit Court of Appeals, Third Circuit.
June 26, 1941.

William H. Foulk, of Wilmington, Del., for appellant.

James P. Garland, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Stewart Lynch, U. S. Atty., of Wilmington, Del., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

In 1923 Smith, the appellant, formed a personal holding corporation under the laws of Delaware. He contributed to the company all of its assets and received in return all of its issued and outstanding capital stock, both preferred and common. Since then, he has continuously been the company's sole stockholder, as well as its president and a member of its board of directors, throughout the period covered by the matters in suit. In the years 1934 and 1935, Smith sold to the company a certain number of its preferred shares for which he received in payment both property and cash. The shares so purchased were immediately cancelled by the company.

In his income tax returns for 1934 and 1935, the taxpayer treated his receipts for the stock, which he had sold to the company, as distributions by the corporation in partial liquidation. The Commissioner of Internal Revenue, asserting that the stock transaction was a redemption essentially equivalent to the distribution of taxable dividends within the meaning of Section 115(g) of the Revenue Act of 1934,[1] assessed deficiencies against Smith for each of the years in question. The taxpayer paid the assessments, filed claims for refund which were refused, and then instituted suit in the District Court (Delaware) to recover the amount of his payments on account of the deficiency assessments. The court below, to which the case was tried without a jury, made findings of fact wherefrom it concluded that the company's payments for the stock were taxable to Smith as dividends under Section 115(g) of the Act. The court accordingly entered judgment for the defendant, from which the plaintiff took the pending appeal.

In view of the findings of fact made by the trial court, which are supported by substantial evidence, it is unnecessary to recite in detail the company's corporate or financial history. The question of law incidental to the present appeal is as to the applicability of Section 115(g) of the Rev-

[1] Sec. 115(g) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 704, reads as follows: "Redemption of Stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that its (it) represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

694

enue Act of 1934 to the facts found by the trial court to which we shall now refer in material part.

The company, according to the plaintiff's testimony, was organized to relieve his estate later from having to pay a multiplicity of state inheritance taxes. The company was never engaged in any business except that of holding and selling the real and personal property contributed by its sole stockholder and of investing and reinvesting the proceeds from its sales of property. It was never indebted except for current and incidental office expenses; and, from the time of its incorporation, the company prospered and showed annual earnings (some years in large amounts) from 1924 to 1935, both inclusive. Except for one year (1932) a portion of the earnings was declared in each year as cash dividends; and at various times between January 12, 1927 and January 14, 1931, both inclusive, a portion of the accumulated earnings was capitalized, for which preferred stock was issued and paid to Smith as a stock dividend in the aggregate amount of 1,892 shares. In December 1933 the capital of the corporation was reduced from $765,000 to $640,000, Smith surrendering the certificates for the outstanding 7,650 shares of old preferred stock and receiving certificates for the 6,400 shares of new preferred. By 1934 the company then had on hand accumulated earnings in excess of $240,000.

In May 1934 Smith offered to buy from his company certain stocks in two other companies for a total price of $88,000, for which he was to give his company 880 shares of its preferred stock. The offer was accepted by formal resolution of the board of directors (Smith not voting), the resolution also providing for the immediate cancellation of the 880 shares of preferred stock upon their surrender by Smith. The value of the shares of stock thus acquired by Smith from his company was, at the time of their transfer, $49,500. At trial, Smith gave as a reason for this transaction his desire to protect the interest of minority stockholders (business associates) in the two companies whose stock was the subject matter of the transaction between him and his company. In November 1934 Smith proposed to assign to his company 435 shares of his preferred stock in exchange for certain mortgages owned by the company. The bonds which the mortgages secured aggregated in principal amount

$43,500. This proposal was accepted by formal resolution of the company's board of directors. The bonds and mortgages were transferred to Smith, who surrendered to the company 435 shares of its preferred stock, which was immediately cancelled. Smith testified that the purpose of this transaction was to enable him to increase the corpus of a trust which he had created for his wife and daughter. In November 1935 the company, at Smith's instance, purchased from him 425 shares of the company's preferred stock, for which the company paid him $42,500 in cash. This stock was likewise immediately cancelled upon its receipt by the company. Smith testified that the purpose of this transaction was to enable him to invest the proceeds in annuity bonds for the benefit of legatees under his will. All told, the plaintiff surrendered to his company 1,740 shares of its preferred stock and received therefor shares of other companies, mortgages, bonds and cash of a total value of $135,500.

The trial court found that [34 F.Supp. 947, 951]: "In the instant case for no apparent business reason, Company issued stock dividends. In 1934 and 1935 for no reason connected with its business, Company redeemed 1,740 shares of its preferred stock which was less than the amount of stock dividends issued to plaintiff. The purpose for the redemption was the desire of plaintiff to withdraw certain funds and property from Company. No one else was interested in the corporation and no creditor would be affected." And further: "* * * There can be no doubt that in the instant case the sole purpose for the redemption or alleged sale was to get into plaintiff's hands a portion of the undistributed profits of the corporation. Plaintiff arranged to relieve company of a portion of its earnings, to cancel a few shares of stock, and continue to hold 100% of the outstanding stock of the corporation."

■ The evidence in the case fully supports the trial court's findings; and the findings justify the court's conclusion that "the stock was cancelled or redeemed at such a time and in such a manner as to make the distribution and cancellation or redemption equivalent to the distribution of taxable dividends within the meaning of the statute."

■ The present case cannot be distinguished in its material features from the

case of Brown v. Commissioner, 3 Cir., 79 F.2d 73, where this court affirmed a decision of the Board of Tax Appeals, holding that the stock sale in that case was a distribution and redemption essentially equivalent to the distribution of a taxable dividend. In the Brown case, it was held that the evidence supported the Board's findings. We are no less bound by the competent findings of the trial court in the instant case, no error, certainly no clear error, appearing therein. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723(c). The legal conclusion is the logical result of the findings. Here, as in the Brown case, no justifiable business reason prompted the company's redemption of its stock. The action was initiated by Smith for his own personal service and advantage; and his ownership of the company remained just as it always had been,—one hundred per cent. The appellant seeks to differentiate the Brown case on the ground that, on the day following that company's purchase and redemption of a portion of its principal shareholder's stock, it increased its capital, and the business of the company was continued at a profit. Those facts were alluded to in the Brown case to show that liquidation was obviously not intended by the Brown company when it redeemed some of its stock. But, neither did Smith's company liquidate or intend to liquidate. The personal requirements and desires of its sole stockholder, and not the liquidation of the company, were the motivating cause of the stock redemption. In any event, "the answer within the intendment of (g) turns not so much upon the question of whether there was or was not liquidation as upon the result." Hyman v. Helvering, 63 App. D.C. 342, 71 F.2d 342, 343 (certiorari denied 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669). The statutory provision involved in the Hyman case was Section 115 (g) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, page 385, which is similar to Section 115(g) of the Revenue Act of 1934, now under consideration. The factual situation in the Hyman case, substantially similar to the present, was well described where the Court of Appeals said, 63 App.D.C. 342, 71 F.2d at page 344, " * * * we have a corporation with large accumulated earnings, which, by means of a purchase of a part of its stock, it transfers to its single stockholder, leaving the corporation precisely in the condition in which it was prior to the transfer, except that its earnings have been distributed to its stockholder without having disturbed his ownership and control of the corporation."

The appellant argues that the stock dividends, the last of which was declared and paid more than three years before any stock was redeemed, were bona fide and that, therefore, Section 115(g) is inapplicable, citing Patty v. Helvering, 2 Cir., 98 F.2d 717; Hyman v. Helvering, Commissioner, supra; Commissioner v. Cordingley, 1 Cir., 78 F.2d 118; and Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156, 158. In the Quackenbos case, however, the test of taxability under Section 115(g) was treated as being "whether the capitalization was for an honest business purpose" which "depend[s] on the particular facts of each case." And in the Cordingley case it was said that sums paid in retirement of stock were not taxable as dividends *"unless* the retirement [was] made * * * as a cloak for the distribution of earnings." (Emphasis supplied.) The appellant's quotation from the Hyman case is a dictum but, even so, the dictum contemplated that the latter distributed earnings had been *in good faith* "converted into capital by the declaration of stock dividends". Assuming that the appellant's quotation from Patty v. Helvering, supra [98 F.2d 719], to the effect that "if redeemed shares have been issued bona fide, § 115(g) * * * never applies" is a correct statement of the law, the answer here is that the trial court found that the stock dividends were issued "for no apparent business reason" and that a portion of the stock was later redeemed "for no reason connected with its [the company's] business." However, it is our opinion that the bona fides in a company's capitalization of its earnings is immaterial to the applicability of Section 115(g). If the stock is cancelled or redeemed "at such time and in such manner" as to make the cancellation or redemption essentially equivalent to a distribution of earnings or profits accumulated after February 28, 1913, the distribution is taxable as a dividend. Such is the express requirement of Section 115(g) "whether or not such stock was issued as a stock dividend." The statute is aimed at the result.[2]

---

[2] See House Conference Report No. 356, 69th Cong., 1st Sess., p. 30 (1939–1 Cum. Bull. (Part 2) 361). Section 201 (g) of the bill dealt with in the Conference Re-

The basic criterion for the application of Section 115(g) is "the net effect of the distribution rather than the motives and plans of the taxpayer or his corporation." Flanagan v. Helvering, App.D.C., 116 F.2d 937, 939, 940. The net effect of the distribution in the instant case upon the redemption and cancellation of the plaintiff's stock was essentially equivalent to the distribution of a taxable dividend. The Commissioner's assessment was, therefore, proper and the plaintiff is without right of recovery.

The judgment of the District Court is affirmed.

port was Section 201 (g) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 147 an antecedent provision in the same terms later used in Section 115 (g) of the Revenue Act of 1934.