OPINION. HaiíROn, Judge: The question of whether a distribution in connection with the retirement of a portion of corporate stock is a taxable dividend or a distribution in partial liquidation depends upon the particular facts of each individual case. For this reason, most of the cases cited by both respondent and the petitioners are inapplicable, since they rest upon a combination of elements all of which are not present in this proceeding. As a result an extended discussion of these cases would not be helpful in the disposition of this case. Although respondent argues that the cash distribution to petitioners in the taxable year constituted a taxable dividend under section 115 (a) and (b) of the Internal Revenue Code, his principal reliance is upon section 115 (g) of the code. The petitioners maintain that these subsections are inapplicable under the particular facts of the case, since in their view the distribution was in partial liquidation of their stock under the definition set forth in section 115 (i), with the gain from such distribution taxable under section 115 (c). Section 115 governs distributions by corporations. A dividend is defined as “any distribution made by a corporation to its shareholders * * * (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.” Sec. 115 (a). Every distribution is presumed to be made out of earnings or profits to the extent thereof, and. from the most recently accumulated earnings or profits. Sec. 115 (b). The pertinent portion of section 115 (c) provides that “amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock.” Section 115 '(g) deals with redemption of stock and states that “If a corporation cancels or redeems its stock * * * at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed * * * shall be treated as a taxable dividend.” Section 115 (i) defines a partial liquidation as a “distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.” Respondent apparently argues that the distributions were taxable to'petitioner under section 115 (a) and (b) on the ground that there was not a complete cancellation or redemption of the company’s stock so as to make the distribution a partial liquidation under the definition set forth in section 115 (i). Although admitting that 40 percent of the company’s stock was called in and canceled, he contends that the stock was not completely canceled until August 8, 1944, when the certificate of reduction was filed with the Secretary of State of the State of New York. He argues that during the period from March 26,1941, to August 8,1944, the canceled stock was equivalent to treasury stock and could have been reissued by the company. We have found as a fact that the shares acquired by the company during the taxable year were acquired for the purpose of their retirement. The evidence in the record completely supports that finding. Not only was there direct evidence to that effect from the company’s officers and the company attorney, but the resolution of March 25, 1941, expressly provided that the stock be purchased and “retired upon the delivery thereof.” In this respect, this proceeding is distinguishable from Alpers v. Commissioner, 126 Fed. (2d) 58, upon which respondent relies. In that case there was no evidence of any purpose on the part of the corporation to retire the shares which were purchased from the corporation’s stockholder. Here the certificate of reduction was not filed until August 8, 1944, because of an oversight on the part of the company’s officers. Approximately two years later the oversight was discovered and steps were immediately taken- to file the certificate. Thereafter, due to unfortunate circumstances, the certificate could not be filed until August 8,1944. However, the fact that the formal filing was delayed until that time did not confer a right of reissue upon the company. See Fry v. Helvering, 128 Fed. (2d) 737; distinguishing Alpers v. Commissioner, supra. We think a fair construction of all the evidence warrants the conclusion that the Brownville Paper Co. did in fact completely redeem and cancel part of its stock in 1941. In that year it called in and canceled 2,000 shares or 40 percent of its total outstanding stock. It paid $160 per share or a total of $320,000, which it charged to its capital stock account. Petitioners contend that $160 was the fair market value of each share of stock at the date of the redemption, and respondent does not deny that fact. Under the circumstances, it is plain that the distribution falls within section 115 (c), unless the cancellation or redemption was essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g). In determining the applicability of section 115 (g), it is important to carefully examine the circumstances surrounding the transaction in order to ascertain the real purpose of the distribution. It is apparent that if the redemption was merely a step in a plan to distribute earnings and profits to stockholders or if it was designed for the benefit of stockholders, the time and manner of the distribution would be essentially equivalent to a taxable dividend. See Flanagan v. Helvering 116 Fed. (2d) 937, and cases therein cited. However, if the redemption was dictated by the reasonable needs of the corporate business, section 115 (g) would not apply. Commissioner v. Champion, 78 Fed. (2d) 513; Commissioner v. Quackendos, 78 Fed. (2d) 156; John P. Elton, 47 B. T. A. 111. In this proceeding we think the retirement of part of the corporate shares in the taxable year served a sound business purpose. The two chief stockholders of the corporation were of advanced years and contemplated the liquidation of the corporation, with the plant to be sold to a new corporation to be formed by the employees. The business of the corporation had reached its peak in 1920, at the time when the shares of the stock were changed from par value to no par value and the stock dividend was paid. Prior to the issuance of the stock dividend as of December 31,1920, the capital of the corporation consisted of 1,000 shares of the par value of $100 each, which was wholly inadequate for the volume of business being done by the corporation at that time. The book value of each share of stock in 1920 was over $1,000. The net sales, accounts receivable, and inventories in 1920 had increased oyer 400 percent from 1913. Net income had increased from $8,479.15 in 1913 to $391,351.80 in 1920. Under the circumstances, the issuance of the stock dividend as of December 31, 1920, was an exercise of reasonable business judgment on the part of the officers and directors of the corporation. Thereafter, the business of the corporation continued very good until 1931. In the 11-year period from 1920 to 1930, inclusive, the average annual net income of the corporation was $196,107.45. Presumably, the volume of business done in those years was in line with the capital of the company. However, after 1930 the business began to contract and in the 11-year period from 1931 to 1941, inclusive, the average annual net income was $57,417.55, or less than one-third of the previous period’s average annual net income. Moreover, part of the capital of the corporation consisted of assets which were set aside for the extension of plant facilities, but in view of the contraction of business and the proposed ultimate liquidation of the corporation, the officers and directors decided to abandon the con-tenlplated expansion. In that situation, there was a realization on the part of the officers and directors of the corporation that its capital was in excess of its needs, and to that extent unprofitable. We can not say, under these circumstances, that the decision of the corporation to retire part of its stock was unreasonable. Redemption under such conditions is not essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g). Commissioner v. Champion, supra; Commissioner v. Cordingley, 78 Fed. (2d) 118; Commissioner v. Quackenbos, supra; John P. Elton, supra. Respondent’s determination on this issue is reversed. Since petitioners claim refunds, accordingly, Decisions will be entered under Rule 50.