**STEIN v. UNITED STATES.**

**No. 45596.**

Court of Claims.

Oct. 1, 1945.

WHITAKER and LITTLETON, Judges, dissenting.

———◆———

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiff is a citizen of the United States and a resident of Chicago, Illinois. She filed her individual income tax return for the calendar year 1936 on March 15, 1937, showing a tax due of $24,277.02,

which was paid in quarterly installments. The last installment of $6,069.25 was paid December 14, 1937. January 20, 1939, an additional assessment of $469.54, plus interest of $53.50, was made against plaintiff for 1936, which was satisfied February 1, 1939, by payment of $522.34 and abatement of 70 cents.

2. March 9, 1940, plaintiff filed a claim for refund of $7,945.59 paid for 1936, on the grounds (1) that the sum of $? '69.01, reported as interest on special assessment bonds issued by various municipalities, was not taxable, and (2) that the sum of $12,033.24, received as a result of the redemption of 120⅓ shares of Class B preferred stock by Puro Filter Corporation of Illinois, hereinafter called the Puro corporation, was not taxable. The Commissioner of Internal Revenue allowed plaintiff's claim for refund of tax paid for 1936 on the bond interest and refunded $2,201.29, together with interest thereon in the amount of $52.80. By letter dated October 9, 1941, he rejected plaintiff's claim for refund of the tax paid on money received by her for the redemption of the preferred stock.

3. In 1926 S. M. Stein, husband of plaintiff, secured an option to purchase all the stock of Chicago Water Purifying Company, hereinafter called the Chicago company, which had been engaged in selling and leasing water filters since about 1913. To finance the proposed purchase he caused the Puro corporation to be organized, with authorized capital stock issued as follows:

"1,250 shares of Class A 7% preferred stock, par value $100.

"2,680 shares of Class B 6% preferred stock, par value $100.

"2,680 shares of common stock, no par value."

Practically the entire issue of Class B preferred stock was subscribed at par by Mr. Stein and friends and associates. Mr. Stein assigned his option to the subscribers for the Class B preferred stock and they in turn assigned the option to the Puro corporation, receiving in asserted consideration for the assignment 2,680 shares of common stock, which was distributed among them in proportion to their subscriptions for Class B preferred stock. The amount realized from subscriptions for Class B preferred stock was paid to the stockholders of the Chicago company in part payment for the stock of that company, and the 1,250 shares of Class A preferred stock of Puro corporation was issued to them in payment of the balance of the purchase price.

4. As part of the agreement for the purchase of the Chicago company stock, provision was made in the articles of incorporation of Puro corporation requiring that each year for five years 250 shares of Class A preferred stock would be redeemed for cash, thus completely retiring in five years the 1,250 shares of Class A preferred stock which had been issued in part payment for the Chicago company stock. This provision was complied with, the last of Class A preferred stock of Puro corporation was retired June 30, 1931, and none has been reissued.

5. Provision also was made in the articles of incorporation of the Puro corporation for the redemption of Class B preferred stock upon order of the board of directors. The following circumstances contributed to a demand on the part of the investors in Puro corporation stock for such a provision. The option for the purchase of the Chicago company stock did not specify the price but granted merely the right to negotiate exclusively for a definite period of time. While negotiations were in progress there was a period of doubt whether the sale would be consummated. Some of the subscribers to Class B preferred stock considered that, even if the purchase of the Chicago company stock should be consummated, in some respects the investment was speculative or hazardous—the business fluctuated with good and bad times and, if the then current agitation for a general city filtration plant in Chicago should result in a municipally owned plant, it would materially and adversely affect the business of the Chicago company. Moreover, because the Puro corporation's assets would consist principally of water filters of a patented type, and refrigerating equipment, with little salvage value, which would therefore be valuable only so long as the corporation was an operating concern, banks would not agree to lend money to the Puro corporation without the endorsement of responsible stockholders or officers.

After all Class A preferred stock had been redeemed, the board of directors from

time to time, as conditions permitted, ordered the retirement of Class B preferred stock, as follows:

| Date | Number of shares redeemed | Amount paid out in redemption |
|---|---|---|
| June 30, 1932............... | 268 | $26,800.00 |
| December 31, 1932.......... | 258 | 25,800.00 |
| June 30, 1933............... | 258 | 25,800.00 |
| March 31, 1934............. | 258 | 25,800.00 |
| October 1, 1934............. | 204½ | 20,450.00 |
| December 31, 1935.......... | 267½ | 26,750.00 |
| March 31, 1936.............. | 266 | 26,600.00 |
| December 31, 1936.......... | 266 | 26,600.00 |

6. These redemptions were made pro rata among all the holders of Class B preferred stock, except as to the redemption of October 1, 1934. For that year holders of approximately 54 shares of Class B preferred stock declined to surrender their shares for redemption because they deemed the stock a good investment. Thereafter Class B preferred stock was called for redemption with the proviso that the stock called should cease to bear dividends after the redemption date and, in consequence, there were no more refusals to surrender for redemption.

7. All classes of stock had equal voting privileges. The stipulated dividends on preferred stock were cumulative and, in the event of liquidation or dissolution, the assets available for distribution to stockholders were to be applied first to the payment of accumulated dividends and retirement of the preferred stock at par, Class A having, while it remained outstanding, priority. After payment of accumulated dividends and retirement of all outstanding preferred stock at par, the assets remaining, if any, were to be distributed to the holders of the common stock.

There were some transfers of stock from the original subscribers, and some holders of preferred stock redeemed in 1936 were not, at the times of redemption, owners of common stock. The extent to which preferred stock and common stock were transferred separately is not shown by the evidence, and it can not be determined to what extent relative ownership of outstanding stock was altered as Class B preferred stock was redeemed.

8. All redemptions of preferred stock were made from earnings and profits. No diminution of the corporation's business operations was planned, anticipated, or realized in connection with the redemption of the preferred stock, nor was there any modification of the charter reducing the amount of authorized stock.

9. The first dividend paid by Puro corporation on its common stock was on December 23, 1936, at the rate of $2.00 per share.

10. The corporation's business was consistently profitable and its earnings and profits were at all times in excess of the amounts paid for redemption and retirement of Class B preferred stock. The corporation had undivided profits on January 1, 1936, of $353,013.17, and the total amount paid out by the corporation in 1936, in redemption and retirement of Class B preferred stock, was $53,200.

11. The 120⅓ shares of Class B preferred stock which plaintiff surrendered for redemption, and for which she received $12,033.24 in 1936, were acquired by her as an original stockholder in the company. See finding 2. She also, at these times in 1936, was the owner of shares of the common stock of the Puro company. Whether these shares were those originally issued to her does not appear from the evidence. During 1936 plaintiff also surrendered for redemption certain Class B preferred stock purchased by her from other stockholders, but the amounts received therefor were not taxed as dividends.

12. Because of controversies with the Bureau of Internal Revenue in connection with the taxability of amounts paid for redemption of such stock, no redemptions of Class B preferred stock were made after December 31, 1936. The first receipts from redemption of Class B preferred stock were not reported as dividends in the income tax returns of the stockholders for 1932, but the Treasury Department took the position that the redemptions were dividends. A long controversy ensued, but the Treasury Department adhered to its position, and the stockholders did not petition the Board of Tax Appeals for redetermination. For the years following, until and including 1935, both the taxpayers and the Treasury Department treated the redemptions of Class B preferred stock as payments of dividends in the determination of the tax liabilities of individual stockholders and the corporation. In its return for the calendar year 1936, the Puro corporation

claimed credit, as dividends paid, for the amount of such redemptions of Class B preferred stock. The revenue agent in charge in Chicago recommended to the Commissioner of Internal Revenue that such credit be not allowed. The Commissioner by letter of January 12, 1943, advised the corporation that the claimed credit would be allowed in the event the distributions to the stockholders are held in the case at bar to be taxable to the stockholders as dividends. A 90-day deficiency letter dated June 16, 1943, advising the Puro corporation of additional tax due for the calendar year 1936, on the ground that the corporation was not entitled to such credit, was transmitted to the corporation. September 11, 1943, the corporation filed with the Tax Court of the United States a petition for a redetermination of the deficiency.

Llewellyn A. Luce, of Washington, D. C., for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyer, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff, at the time of the original formation of the Puro corporation in 1926, acquired by subscription shares of its Class B 6% preferred $100 par value stock, at $100 per share. With each share of preferred went a share of common stock of no par value. Neither the plaintiff nor any other stockholder paid any separate cash consideration for the common stock, though they assigned to the corporation an option for exclusive negotiation with the stockholders of the Chicago Water Purifying Company for the purchase of their stock, which option had been acquired by S. M. Stein, the plaintiff's husband, the moving party in the formation of Puro, and had been assigned by him to the small group of his friends and associates who subscribed for stock in Puro. The Chicago company had an established business of selling and leasing water filters.

The investors in Puro stock thought that their investment was somewhat speculative, as to the security of their capital since the physical property of the Chicago company whose stock they hoped to obtain was a specialized machinery which would have little salvage value if Chicago should, as it might, install a municipally owned filtration plant. They also were aware, at the time they subscribed for their stock, that the purchase of the Chicago company's stock might fall through, in which case they would have wanted to get their money back. For these reasons, perhaps inter alia, they had the articles of incorporation of Puro provide for the redemption of the Class B preferred stock upon order of the board of directors.

The stock of the Chicago company was obtained and the business was operated profitably. No dividends were paid on the Puro common stock until 1936, but, beginning in 1932, approximately one-tenth of the preferred stock of the company was redeemed each half year, so that by the end of 1936, eight of these redemptions had occurred and most of the preferred stockholders had been paid four-fifths of the amounts originally paid for their stock. Yet on January 1, 1936, Puro had undivided profits of $353,013.17, or considerably more than the amount originally paid for the Class B preferred and the common stock.

The plaintiff was required to pay income taxes upon the payments made to her upon the redemption of her preferred stock, upon the basis that these payments were, for tax purposes, the equivalent of dividends, and were not returns of capital. For the taxes so paid by the plaintiff on the $12,033.24 of redemption money she received in 1936, she brings this suit.

Section 115 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 868, says:

"(a) Definition of dividend. The term 'dividend' when used in this title (except in section 203(a) (3) and section 207(c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

\*     \*     \*     \*     \*     \*

"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, 'complete liquidation' includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

* * * * * * .

"(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

* * * * * *

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

Treasury Regulations 94, promulgated under the Revenue Act of 1936, contains the following:

"Art. 115–9. Distribution in redemption or cancellation of stock taxable as a dividend.—* * *.

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. * * * *"

The Government says that Section 115 (g), quoted above, is applicable; that the payments to the plaintiff in redemption of her preferred stock were made to her "at such time and in such manner as to make the distribution * * * essentially equivalent to the·distribution of a taxable dividend * * *;" and that they were, therefore, properly taxed. We agree. The corporation had large net earnings, and had no thought of liquidating its operating assets, or curtailing its operations. It was distributing a part of its net earnings or profits. If it had, as it might have, distributed some of those earnings to the holders of its common stock, that distribution would undoubtedly have been a taxable dividend. Instead, it distributed the earnings as the price of the redemption of its preferred stock. To whatever extent the ownership of the preferred and common stock was, as it was of the time of the original issue, in the same persons, share for share,

the distribution went to the same persons in the same amounts as it would have gone if it had been distributed as a dividend on the common stock. The shares, the redemption money for which was taxed to the plaintiff, were shares originally issued to her. The record does not show whether she still had the common shares similarly acquired, though it does show that she still had common shares. If there had been a change in the facts in this regard, and if it is material whether there was such a change, the plaintiff could and should have proved the facts as they were in 1936.

One of the reasons for the provision in Puro's articles of incorporation for redemption of the preferred stock was the thought of the original investors that, while the business might be profitable for a time, it might be ruined, with a large loss of capital asset value, by the installation by the City of Chicago of a municipal filtration plant. The investors seem, therefore, to have desired to have their capital paid back to them out of current profits, while retaining, in their common shares, the share in the earnings of the company which they had before, less the 6% which the preferred stock paid.

The plaintiff contends that, since the redemption was an honest business transaction, it is not taxable. We think that the question of whether a distribution is "essentially equivalent to the distribution of a taxable dividend" under section 115(g) does not depend on the presence or absence of honesty in the distribution. The question is, as the statute makes it, a question of equivalence, and if that is present, the statute expressly taxes the distribution.

In Rheinstrom v. Conner, Collector of Internal Revenue, 125 F.2d 790, the Circuit Court of Appeals for the Sixth Circuit listed a number of factors which are of assistance in determining equivalence. On the facts before us, as recited in the findings, we think the requisite equivalence was present and the payments were taxable as income.

The plaintiff's petition will be dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES, Judge, concur.

WHITAKER, Judge, dissenting.

The inclusion in plaintiff's income of the entire amount received by her for the redemption of her preferred stock in the Puro corporation was proper only if "the distribution and cancellation or redemption in whole or in part [was] essentially equivalent to the distribution of a taxable dividend." The majority opinion holds that it was. I do not think so.

Plaintiff and other holders of the preferred stock paid cash for it. They received their common stock in consideration of the transfer to the corporation of their option to purchase the stock of the Chicago Water Purifying Company. At the time they bought the preferred stock it was agreed that it would be redeemed at the discretion of the Board of Directors. It was redeemed pursuant to this agreement.

In the opinion and in the findings it is said that it was redeemed from earnings and profits. This is a conclusion that I do not think is justified. Whether or not it was redeemed from earnings or profits or with the money which these people originally paid for the stock, it is impossible to say.

Moreover, at the time it was redeemed some of the holders held only the preferred stock. They did not own any common stock, and when their preferred stock was redeemed, their interest in the company ceased. Nor is it true that the preferred stock was redeemed pro rata until after the corporation called it and required all holders of it to permit its redemption. Before this some of the holders of it preferred to keep the stock and declined to allow it to be redeemed.

For the distribution to have been essentially equivalent to the payment of a dividend, the distribution must have been out of earnings and profits, it must have been pro rata, and it must have been to persons who remained stockholders after the redemption. It did not fulfil these requirements and, therefore, I cannot agree that it was proper to include within the plaintiff's income the entire amount she received upon the redemption of her stock.

LITTLETON, Judge, concurs in the foregoing opinion.