**COMMISSIONER OF INTERNAL REVENUE**

**v.**

**SULLIVAN et al.**

**No. 14562.**

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

---

7. The time for appeal runs from the date of the "determination". Dyer v. MacDougall, 2 Cir., 201 F.2d 265, 267.

Ellis N. Slack, Sp. Asst. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Charles W. Davis, Chief Counsel, Bureau Int. Rev., Charles E. Lowery, Sp. Atty., Bureau Int. Rev., Lee A. Jackson, Sp. Asst. to Atty. Gen. and Melva M. Graney, Sp. Asst. to Atty. Gen., for petitioner.

Dorothy Ann Kinney, Amarillo, Tex., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

These appeals involve income taxes for the calendar year 1943. They are in consolidated proceedings and were taken by the Commissioner from decisions of the Tax Court entered on August 11, 1952. Petitions for review were filed November 4, 1952. This court accordingly has jurisdiction of the cases under Section 1141(a) of the Internal Revenue Code, as amended by Section 36 of the Act of June 25, 1948, 26 U.S.C.A. § 1141(a). Error is assigned on the part of the Tax Court in holding that certain distributions in kind were not essentially equivalent to a taxable dividend within the meaning of Section 115(g) of the Internal Revenue Code, 26 U.S.C.A. § 115(g), but that such distributions were taxable as in partial liquidation of the corporation as provided in Section 115(c) of said code.

The Texon Royalty Company, a Delaware corporation, made a distribution in kind on April 1, 1943, to its two sole stockholders in cancellation of 2,000 shares, or two fifths, of its capital stock. The income tax deficiencies asserted against the husbands of the two stockholders resulted from the fact that the tax returns of each couple were filed in accordance with the community property laws of Texas, in which state all

parties resided. The question presented here is whether the redemption and cancellation of the stock was at such time and in such manner as to make the distribution essentially equivalent to a taxable dividend so as to be taxable to the recipients to the extent of Texon's accumulated earnings and profits, instead of being treated as payment in exchange for the stock and subject only to a capital gains tax. In other words, was the distribution taxable under Section 115(g) or 115(c) of the Internal Revenue Code?

The Tax Court held that Section 115 (g) was inapplicable and, therefore, that the taxpayers' entire gain on the distribution was taxable as a long-term capital gain. This holding was based primarily upon findings of fact, in substance as follows: Texon held a great many producing oil leases outside of the Agua Dulce oil field, which was a high pressure field. A suit for damages from a blowout which occurred in prior operations in that field was pending against Texon at the time of the distribution. The leases transferred needed to be developed, and they were transferred because Texon did not want to take the risk of developing them and because it did not have authority under its charter to drill wells. The same reasons prompted the distribution of its drilling equipment. Another reason was that this equipment could be used in the development of the oil properties transferred. The gas payment and the notes were included in the distribution in order to furnish the distributors with additional capital or credit to aid them in the development of the properties transferred, which was undertaken soon after the distribution. The drilling equipment was transferred by the stockholders to a corporation in connection with the development. The avoidance of taxes was not one of the reasons for the distribution.

The petitioner argues that, if the redemption of stock is made pro rata, any business purpose for the redemption thereof will usually be outweighed by the net effect of the transaction. The respondents contend that the Tax Court has weighed the evidence in this case with regard to the net effect of the transaction as well as to the business purposes of the corporation, and has found that the distribution was dictated by the reasonable needs of the corporate business, not merely to benefit the stockholders by giving them a share of the earnings of the corporation.

The Tax Court's opinion expressly refers to its considering the net effect of the transaction; and we cannot say that it used the wrong test, or that there was any specific test for the issue before it. We agree that the pro rata redemption of stock will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits, but to hold that this is always true would nullify the regulation which sanctions it in some cases and says that the question depends upon the particular circumstances of each case. See Treasury Regulations 111, Secs. 29.115–5 and 29.115–9.

The so-called net-effect test is not a weighted formula by which to solve the issue before the court. The net effect of the transaction is not evidence or testimony to be considered; it is an inference to be drawn or a conclusion to be reached. It is not a solvent but a residuum; it is not a process but a product; it is not a means but an end; it is not a solution but a restatement of the statutory provision; it is the gist of the governing law of the case; it is not a balance for weighing the law against the facts; it is the law itself. "Net effect" is a paraphrase for "essentially equivalent." It is just as if the statute read: "If a corporation redeems its stock in whole or in part, so that the net effect of the transaction is the same as the payment of a taxable dividend, the amount so distributed shall be treated as a taxable dividend." The net-effect test is not a test but an attractive abbreviation of the statute, as to which we shall be

on safer ground if we stick to the words of the statute: essentially equivalent.

The distribution of the high-pressure leases and the drilling equipment constituted a contraction of Texon's business. When there is a contraction or shrinkage of corporate business, the need of a corporation for funds to carry on its former activities is largely eliminated. Following a contraction of its activities, and with surplus funds on hand, good business and accounting practices dictated a redemption of a portion of the corporation's capital stock. Failure to reduce its capital would have resulted in the payment of unnecessary capital-stock taxes contrary to good business practices. There were other factual considerations that entered into the decisions of the Tax Court.

Strong as is the pro-rata factor in this case, it is not sufficient in itself to require or authorize us to set aside the findings of the Tax Court and invoke the application of Section 115(g). To do so would nullify the regulation that authorizes the complete retirement of any part of the stock, whether or not pro rata among the shareholders. In a number of cases, in applying the so-called net-effect test, some of which held the distribution taxable, the courts have called attention to the fact that there was no purpose on the part of the taxpayer to contract its business or narrow the scope of its operations. In Flanagan v. Helvering, Justice Vinson (later Chief Justice of the United States) said: "The corporation did not manifest any policy of contraction". 73 App.D.C. 46, 116 F.2d 937, 939. See also Commissioner v. Babson, 7 Cir., 70 F.2d 304; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; Commissioner v. Champion, 6 Cir., 78 F.2d 513; Smith v. United States, 3 Cir., 121 F.2d 692; Hirsch v. Commissioner, 9 Cir., 124 F.2d 24; Rheinstrom v. Conner, 6 Cir., 125 F.2d 790; Vesper Co. v. Commissioner, 8 Cir., 131 F.2d 200; Commissioner v. Snite, 7 Cir., 177 F.2d 819; Boyle v. Commissioner, 3 Cir., 187 F.2d 557; Commissioner v.

Roberts, 4 Cir., 203 F.2d 304; Upham v. Commissioner, 4 T.C. 1120; Imler v. Commissioner, 11 T.C. 836; O'Brian v. Commissioner, Par. 51,373 P–H Memo T.C., 1141.

The decisions of the Tax Court are affirmed.

Affirmed.

RIVES, Circuit Judge (dissenting).

Congress has consistently and wisely, I think, been as definite and objective as possible in defining what corporate distributions constitute taxable dividends. It has left as small field as is required by necessity for the operation of such uncertainties and variables as the motives, plans, or business purposes of the corporation or its stockholders. The general rule is that *any* distribution of either money or property by a corporation to its stockholders constitutes a taxable dividend to the extent of the corporation's earnings and profits. Internal Revenue Code Sec. 115 (a) and (b). There is an exception when the distribution is in complete or partial liquidation of the corporation. Sec. 115(c). Even then, however, to the extent that it represents a distribution of earnings or profits, it is treated as a taxable dividend if made "at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend". Sec. 115(g).

What is meant by the quoted expression? Considerable help is afforded by Section 29.115–9 of Treasury Regulations 111:

"Sec. 29.115–9. Distribution in Redemption or Cancellation of Stock Taxable as a Dividend.— * * *

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or re-

demption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. * * * "

The various Regulations have contained this identical language ever since 1929.[1] Since then, the identical language of the present Section 115(g) of the Code has been repeatedly re-enacted. The Regulations, being clearly a reasonable interpretation of subsection (g), must be deemed to have received the implied approval of Congress and, therefore, to have the force and effect of law. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52.

The Regulations make it clear that the fact that the cancellation or redemption of stock is pro rata is the most important single fact tending to show essential equivalence to the distribution of a taxable dividend. A pro rata redemption of stock does not change the stockholders' proportionate interests in and control over the corporation and is usually a mere formality. It seems to me utterly immaterial whether each of the two stockholders owned 1500 shares, as before the distribution, or 2500 shares, as after the distribution. They each owned fifty percent of the stock both before and after the distribution. Their interests in and control over the corporation were not affected in any way.

It seems to me that the fact most frequently mentioned and given greatest weight in the decisions is that the cancellation or redemption of stock was pro rata, or substantially so, and that, therefore, the same proportionate ownership of and control over the corporation existed after the distribution as before.[2]

An essential, of course, is that the corporation had a surplus which could have been distributed by the declaration of a true dividend, and the fact of a large surplus is often mentioned in the decisions.[3] This corporation had accumulated earnings and profits in the amount of either $905,217.95 or $359,878.24. Another fact mentioned in the decisions is the corporation's history as to payment of dividends.[4] The stock redeemed in 1943 was originally issued in 1937, and the corporation had never declared any regular dividends. Another fact mentioned is that the amount paid for the redeemed stock was not based upon value, book or otherwise,[5]

1. See Section 19.115–9 of Treasury Regulations 103 (1940 ed.); Article 115–9 of Treasury Regulations 101 (1939 ed.), 94 (1936 ed.), and 86 (1935 ed.); Article 629 of Treasury Regulations 77 (1933 ed.) and 74 (1929 ed.).

2. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; Boyle v. Commissioner, 3 Cir., 187 F.2d 557; Smith v. United States, 3 Cir., 121 F.2d 692; Commissioner v. Roberts, 4 Cir., 203 F.2d 304; Vesper Co. v. Commissioner, 8 Cir., 131 F.2d 200; Hirsch v. Commissioner, 9 Cir., 124 F.2d 24; Stein v. United States, Ct.Cl., 62 F.Supp. 568, 104 Ct.Cl. 446, see also, Levit v. Commissioner, 43 B.T.A. 1077, 1086; W. & K. Holding Corp. v. Commissioner, 38 B.T.A. 830, 841.

3. Flanagan v. Helvering, supra n. 2; Boyle v. Commissioner, supra n. 2; Hill v. Commissioner, 4 Cir., 66 F.2d 45; Commissioner v. Roberts, supra n. 2; Rheinstrom v. Conner, 6 Cir., 125 F.2d 790; McGuire v. Commissioner, 7 Cir., 84 F.2d 431; Hirsch v. Commissioner, supra n. 2; see also, W. & K. Holding Corp. v. Commissioner, supra n. 2; cf. Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782.

4. Flanagan v. Helvering, supra n. 2; Boyle v. Commissioner, supra n. 2; Hirsch v. Commissioner, supra n. 2; see also, Natwick v. Commissioner, 36 B.T.A. 866, 875.

5. Vesper Co. v. Commissioner, supra n. 2.

and that holds true in this case. Other factors discussed in the cases go to the presence or absence of a business contraction or liquidation purpose [6] or of a tax avoidance motive.[7] On the other hand, that a business purpose prompted the distribution has been regarded as immaterial,[8] and it has been recognized that the absence of a motive of tax avoidance is not determinative of the issue.[9]

The last two subjective purposes or motive factors are the only ones tending to support the majority decision. There were business needs and purposes of the corporation as explained in the majority opinion for a distribution of the properties except as to two of those properties, the gas payment and notes receivable having a total fair market value of $774,036.27. Those two were included in the distribution for the stockholders' benefit rather than by reason of any business purpose of the corporation. As to the distribution of the other properties, the corporation's business purposes and needs furnished no reason for the redemption of stock accompanying the distribution. Such distribution, or any disposition, of these properties could have been made just as well without as with the redemption of stock.

The only real reasons suggested for the redemption of stock were to reduce capital stock taxes, usually a very small factor, and to accord with good business and accounting practices. If those reasons were really substantial, they did not call for any liquidation, even partial, of the corporation, but merely for a simple amendment of the corporate charter. A mere change in capital structure is not, in and of itself, a legitimate business reason for the redemption of stock. Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782.

It seems to me that the law is clearly to the effect that the actual conduct of the parties and the objective results of the distribution and redemption of stock, rather than any business motives, needs or purposes, furnish the controlling factors for the application *vel non* of Section 115(g).[10] Whatever may have been the mental ratiocinations of the two stockholders and the assumed business purposes and needs of the corporation, their conduct and the results thereof were "essentially equivalent to the distribution of a taxable dividend." Their acts seem to me more important taxwise than their intentions.

I, therefore, respectfully dissent.

6. Flanagan v. Helvering, supra n. 2; Boyle v. Commissioner, supra n. 2; Smith v. United States, supra n. 2; Commissioner v. Roberts, supra n. 2; Vesper Co. v. Commissioner, supra n. 2.

7. Commissioner v. Roberts, supra n. 2; Boyle v. Commissioner, supra n. 2; Flanagan v. Helvering, supra n. 2; Smith v. United States, supra n. 2; Natwick v. Commissioner, 36 B.T.A. 866; Adler v. Commissioner, 30 B.T.A. 897.

8. See Lewis v. Commissioner, 1 Cir., 176 F.2d 646; Estate of Hill v. Commissioner, 10 T.C. 1090.

9. Cf. Flanagan v. Helvering, supra n. 2; Hill v. Commissioner, supra n. 3.

10. Flanagan v. Helvering, supra n. 2; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23, 170 A.L.R. 1389; Boyle v. Commissioner, supra n. 2; Smith v. United States, supra n. 2; Brown v. Commissioner, 3 Cir., 79 F.2d 73; Commissioner v. Roberts, supra n. 2; McGuire v. Commissioner, supra n. 3; Commissioner v. Snite, 7 Cir., 177 F.2d 819; Vesper Co. v. Commissioner, supra n. 2; Hirsch v. Commissioner, supra n. 2; Stein v. United States, supra n. 2; cf. Hill v. Commissioner, supra n. 3; Wall v. United States, 4 Cir., 164 F.2d 462.